**W. E. NEAL & SON v. PANHANDLE & S. F. RY. CO. (No. 2037.)**

(Court of Civil Appeals of Texas. Amarillo. Nov. 22, 1922.)

1. **Carriers ⬤�útil230(13)—Effect of general verdict for carrier in action for injuries to shipment of live stock was finding against negligence.**

The effect of a general verdict for a carrier, in an action for injuries to live stock shipped over its lines, was a finding against negligence.

2. **Carriers ⬤⟭230(7)—Charge against carrier's liability for injuries to horses, if caused by inherent propensities or weakness, held justified by testimony.**

In case of the shipment of heavy Percheron horses contracting colds and fever and swollen hocks, wherein the evidence showed that a caretaker accompanied the shipment made in an especially constructed car for the purpose, having room therein for feed, water, and rest, and there was practically no testimony showing rough handling while on defendant's line, the fact that the horses became restless, fretful, and heated when the car was not moving, and the further fact that they were naturally a large, heavy breed of horses, which tended to cause and naturally inclined their hocks to swell if kept standing, and such conditions being aggravated by weather changes, and there was an epidemic of flu which affected them, was all the testimony required to give a charge that, if the jury believed that the injuries to the horses and the death of one horse was caused by the inherent propensities or weaknesses of the animals, to find for defendant.

Error from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by W. E. Neal & Son against the Panhandle & Santa Fé Railway Company. From a judgment for defendant, plaintiff brings error. Affirmed.

Carl Gilliland, of Hereford, for plaintiff in error.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for defendant in error.

HALL, J. Neal & Son sued defendant in error, railway company, to recover $3,248 with interest, as damages alleged to have resulted to a carload of Percheron horses, shipped by plaintiffs from Dallas, Tex., to Dawn, Tex., via the Texas & Pacific Railway Company to Sweetwater; thence over the defendant in error's line to Dawn. The original petition alleges that the shipment was unnecessarily and negligently delayed, roughly handled, unnecessarily switched and jerked, that the horses were negligently kept on the car without being unloaded, and as a result of such negligence one of the animals died and the remainder were greatly injured. The plaintiffs alleged further

that the said Percheron horses were a large breed of horses, were fat and heavy, and that by reason of having to stand on their feet an unreasonable time under existing weather conditions, colds and fever developed, their hocks became swollen and enlarged so that one of the stallions died and others became wind-broken.

Amongst other defenses the railway company pleaded that said animals died or became injured by reason of their inherent propensities and weaknesses, and the long delays and changes in temperature to which said animals were subjected before they came into its charge for transportation; that the plaintiffs had a caretaker, along with said shipment, who did not request the defendant at any time to unload the same for any purpose; that the shipment was transported in a specially equipped Arms palace car and had room therein for feed, water and rest; that said car was so constructed and was used by plaintiff in order that the animals could be transported without the necessity of unloading the same en route for feed, water and rest, and that the injuries, if any, resulted from the failure of their caretaker to properly look after and feed the animals in transit.

The case was submitted to a jury by a general charge, and is before us upon two propositions, based upon the alleged error of the trial court in charging the jury upon the issue of inherent vice and weakness in the absence of any evidence to sustain such defense. Paragraph 10 complained of is as follows:

"You are further charged that if you find and believe from the evidence that the injuries to said four head of horses and mares and the death of said one horse was caused by the inherent propensities or weakness of said animals, you will find in favor of the defendant."

Inherent is defined by Webster in part as follows:

"Firmly or permanently contained; infixed; indwelling; existing in something as a permanent attribute; involved in the constitution or essential character of anything; belonging by nature."

Propensity is defined thus:

"Natural inclination; disposition as to something good or evil; tendency; proneness."

In the case of Texas Central Railway Co. v. Hunter & Co., 47 Tex. Civ. App. 190, 104 S. W. 1075, the trial judge defined the term "inherent vice" thus:

"The term 'inherent vice' as used in this charge means a fault not possessed by the ordinary of its kind."

That was a case involving damages to a shipment of cattle. Judge Conner said that

the trial court's definition of inherent vice was too restrictive and continued:

"As seen from the authority quoted, the carrier, in the absence of negligence, is not liable for injuries arising from or attributable to the inherent, natural propensities and habits of the animals themselves, notwithstanding the fact that the 'ordinary of its kind' may have the same inherent natural propensity or habit."

[1, 2] We do not assent to the proposition that there is no evidence upon which the charge could be based. It appears from the statement of facts that the plaintiff sent an experienced caretaker with the horses to Dallas, where they were exhibited at the fair, and that he returned with the shipment, remaining in the car with the horses during the entire trip. The animals were loaded on the cars of the Texas & Pacific Railway Company at 10 p. m. October 29th, and arrived at Sweetwater at 2 p. m. October 31st. They left Sweetwater at 3:10 a. m. November 1st and arrived at Dawn at 12:30 p. m. November 2d. It will be seen that much more time was consumed in transit over the Texas & Pacific Railway than over the line of the defendant. It was agreed that the distance from Dallas to Sweetwater was 234 miles and from Sweetwater to Dawn was 240 miles. There is practically no testimony showing rough handling of the shipment while on the defendant's line and the evidence with reference to the delays does not disclose that they were negligent. The effect of the general verdict by the jury is a finding against negligence. Ackerman v. Ackerman, 22 Tex. Civ. App. 612, 55 S. W. 801.

The caretaker and one of the plaintiffs were plaintiff's principal witnesses. The substance of their testimony is that the weather while at Slaton was warm and that horses standing in a car would fret and get restless; that the caretaker would have to open the car and have plenty of draft through it; and "that when the car is still that way you can just look out for a cold—you can just look out for sick horses"; that, when cars in which horses are riding are kept moving, the horses are usually still and do not fret and do not get hot, and you can close the car while it is moving and ventilate it much easier than when it is standing still. "When the horses arrived at Dawn they all had bad colds and fever, and when they were unloaded one of the stallions, in being led down the chute, fell against the side of the chute and could not get on its feet and walk to the barn, and died about a week after arriving at Dawn."

Two of the stallions had fever ranging from 105° to 106°, the other horses having colds and fever, nearly all of them having swollen legs. Some of them having their hocks bruised. The mares all had colds and fever, and their hocks were swollen when they reached Dawn. "These were large Percheron horses and after they had stood in cars for a long while their hocks and legs swell. When a car in which horses are riding is still, horses become uneasy, restless, and get hot, and when the car begins to move again they get chilled, which develops colds and fevers. This has a tendency to settle in their hocks and cause enlarged hocks; that under the weather conditions which existed at the time with the horses standing on the cars as they did, the horses would become fretful and heated, which would cause them to take cold and fever and their legs to swell. While a car is standing it cannot be properly ventilated."

A veterinarian testified that horses in close confinement will take colds or influenza; that overheating and a sudden change in temperature would produce that condition; that a horse is very liable to colds when on a car being shipped, due to close confinement and a change of temperature; that if the ventilation is not proper he will be more apt to take cold; that the influenza which the horses had was similar to that influenza which people were having about that time; that it develops in close confinement and is transmitted from one horse to another; that swollen hocks is the result of poor circulation of blood in the animals' legs and is caused by the horses not having enough exercise to start circulation; that swollen hocks would likely result from a long shipment if the horses were not taken out of the car and exercised.

The caretaker testified that he asked the defendant's agents at Sweetwater to be permitted to unload the horses; that he found all the pens except one full of cattle; that the empty pen was muddy, and, on account of the various kinds of horses in the car, they could not be held in the same pen together. He made no request that he be permitted to unload them for exercise. If the failure of the defendant to provide an opportunity to unload, and the various delays en route did not amount to negligence, and the horses were shipped and held in the best car obtainable for that purpose there should be no liability. The fact that the horses became restless, fretful, and heated when the car was not moving and the further fact that they were naturally a large, heavy breed of horses, which is an inherent quality, and which tended to cause and naturally inclined their legs and hocks to swell, if kept standing, and such conditions being aggravated by weather changes, and there was an epidemic of flu which affected them, was in our opinion all testimony requiring the court to give the charge complained of.

"In the transportation of live stock, in the absence of negligence, the carrier is relieved from responsibility for such injuries as occur from or in consequence of the vitality of the freight.

He does not absolutely warrant live freight against the consequences of its own vitality. Animals may injure or destroy themselves or each other. They may die from fright or from starvation, or they may die from heat or cold. In all cases, therefore, where injuries occur by reason of the inherent vices or natural propensities of the animals themselves, the carrier is relieved from responsibility, if he can show that he has provided all suitable means of transportation and exercised that degree of care which the nature of the property requires." 1. Hutch. "Carriers" (3d Ed.) § 336; Missouri Pacific Ry. Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; St. Louis & San Francisco Ry. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1150; I. & G. N. Ry. Co. v. Young (Tex. Civ. App.) 72 S. W. 68.

The judgment is affirmed.