## AMERICAN RAILWAY EXPRESS COMPANY *v.* ESTROFF.

1. This being an interstate shipment, the rights and liabilities of the parties are to be determined by the acts of Congress, their construction by the Supreme Court of the United States, the original contract of shipment, and common-law principles applied by that court.

2. By the act of March 4, 1915 (c. 176, 38 Stat. 1196), known as the Cummins act (U. S. Comp. St. § 8604a), a carrier receiving property for transportation in interstate commerce is required to issue a receipt or bill of lading therefor, and, in case of loss or injury thereto, is liable for the full actual loss, damage, or injury to such property, notwithstanding any limitation of liability, or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or tariff filed with the Interstate Commerce Commission.

(a) By the act of August 9, 1916 (c. 301, 39 Stat. 441), known as the Cummins amendment, the above provision of the act of 1915 does not apply, first, to baggage, and, second, to property, except ordinary live stock received for transportation, concerning which the carrier shall have been expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates depending upon the value declared in writing by the shipper, or agreed upon in writing as the released value of the property, in which event the shipper can recover no amount exceeding the value so declared.

3. To make such declaration or agreement effective and binding upon the shipper it is not essential that the writing containing such declaration or agreement be signed by the shipper; but it is sufficient if the carrier's receipt or bill of lading given to the shipper on receipt of his goods for shipment contains such declaration or agreement, and the shipper accepts, receives, and acts upon such receipt or bill of lading, the shipper by his acceptance thereof being presumed to know and accept the terms and conditions of the written receipt or bill of lading.

4. Where there is such declaration of value or agreement as to the released value of the goods shipped, the shipper can not escape the effect of such declaration or stipulation by bringing an action of trover for the recovery of the goods shipped, thus treating as a conversion the loss of the goods by the carrier and its refusal to deliver them on demand.

5. An instruction by the trial judge to the jury, contrary to the principle announced in the last headnote, is erroneous, but is harmless in the absence of such declaration of value or agreement as to the released value between the carrier and the shipper.

6. To enable the carrier to establish its defense of limited liability in this case, it is fundamental and essential that the shippers either declared the value of their property, or agreed with the carrier as to its released value, at the time the contract of shipment was entered into.

(a) In the absence of such declared value by the shippers, and of any agreement between the carrier and the shippers as to the released value of the goods at the time they were delivered for transportation, the fact that the carrier's agent prepared and signed a receipt therefor, which contained an agreement as to the released value of the shipment, the shippers knowing nothing of its preparation and execution, and it not having been delivered to them until four or five months· after the shipment was made and the loss of the goods, did not amount to a declaration of value or agreement as to released value; and was not sufficient to sustain the carrier's defense of limited liability.

(b) While the ruling made by the Court of Appeals in the first headnote of its decision in this case is too broad as to interstate shipments, we think the result reached by the Court of Appeals is correct, and that its judgment should be affirmed.

No. 4288.　October 14, 1924.

Certiorari; from Court of Appeals. 31 *Ga. App.* 577.

On October 26, 1918, the plaintiffs, S. & W. Estroff, who were merchants at Lyons, Ga., sent to the express office of the defendant, the American Railway Express Company, at said place, a box containing 27 suits of men's clothing. The box was carried to the express office by a drayman employed by plaintiffs for that purpose, and the express agent observed that the box did not bear the name and address of the consignee. The agent then telephoned plaintiffs, informing them of this fact. One of the plaintiffs replied, over the telephone, that he. would call at the express office later in the day and properly mark the box so as to show the consignee's name and the point of destination. He was advised by the agent that it was only a few minutes of train time, and, if he would give the marking directions over the telephone, the agent would address and ship the box. Thereupon one of the plaintiffs informed the agent that the box was to be shipped to Gillespi Shields Company, Knoxville, Tenn. The agent, while understanding the name of the consignee, misunderstood the point of destination; and believing he had been directed to ship the box to Gillespi Shields Company, Nashville, Tenn., he so directed the shipment. At a later date the plaintiffs, having been called upon by the consignee to pay the account represented by the merchandise shipped, called at the express office to learn whether the goods had been forwarded. This was four or five months after the goods were de-

livered to the express company. On this occasion the agent delivered to the plaintiffs a receipt for these goods, purporting to be of the date of the delivery of the goods to the express company. No receipt was delivered to plaintiffs at the time the goods were delivered to the company; there was no agreement as to their value, and the shippers did not state or declare the value of the property, nor was the value demanded by the agent, and there was no understanding that the goods would be carried at reduced rates based on such agreed valuation. The Gillespi Shields Company did business in Knoxville, and not in Nashville. The goods were never transported to Nashville, never delivered to the consignee, and were never returned to plaintiffs, although demand was made upon the company therefor. The plaintiffs brought an action of trover against the company for the recovery of these goods. On the trial of the case the plaintiffs introduced the following receipt:

"Uniform Express Receipt. The Company will not pay over $50, in case of loss, or 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid.

"Southern Express Company

"Non-Negotiable Receipt.                          10/26    1918.

"Received from S. & W. Estroff subject to the Classifications and Tariffs in effect on the date hereof, Bx. value herein declared by shipper to be———dollars. Consigned to Gillespi, Shields & Co., at Nashville, Tenn. Charges, Col. Which the Company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt.                          Mosely

"For the Company."

Attached to this receipt were certain conditions in which was the following: "In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight,

for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein, the shipper agrees that the value of the shipment is as last above set out, and that the liability of the company shall in no event exceed such value."

The defendant offered in evidence a duly certified copy of Express Classification No. 26, of file with the Interstate Commerce Commission, for the purpose of showing that it had and maintained alternate rates, depending upon the value declared by the shipper. This classification contained this provision: "13. Valuation charges: (a) Rates named in tariffs governed by this classification, except as to ordinary live stock, are dependent upon and vary with the declared or released value of the property, and except as to live stock chiefly valuable for breeding, racing, show purposes, or other special uses, other live animals named and not named herein, live birds, live pigeons, live poultry and reptiles, are based upon property declared to be of, or released to, a value not exceeding $50.00 for any shipment of 100 pounds or less, or not exceeding 50 cents per pound actual weight for any shipment in excess of 100 pounds, when the declared or released value exceeds that above stated, except as to paintings, pictures, statuary, and wax figures of a declared or released value exceeding $550.00 the rates are 10 cents greater for each $100 or fraction thereof in excess of the value stated above." This classification was the rate schedule and tariff of the defendant of file with the Interstate Commerce Commission. The trial judge rejected it from evidence. The court gave to the jury the following instruction: "This is a trover suit; it is not a suit on a contract of shipment at all. . . So that the case does not turn upon stipulations in the contract at all, and any clause as to limitations in this claim as to damages has not a thing in the world to do with this case."

The jury returned a verdict against the defendant. It moved for a new trial upon the grounds, among others, that the court erred in the rulings just stated. The Court of Appeals affirmed these rulings, and the defendant brought the case to this court by certiorari.

*Alston, Alston, Foster & Moise* and *Lankford & Rogers,* for plaintiff in error.

*Giles & Sharpe,* contra.

HINES, J.    (After stating the foregoing facts.)

1. This being an interstate shipment, the rights and liabilities of the parties are to be determined by the acts of Congress, their construction by the Supreme Court of the United States, the original contract of shipment, and common-law principles applied by that court. Southern Express Co. *v.* Byers, 240 U. S. 612 (36 Sup. Ct. 410, 60 L. ed. 825, L. R. A. 1917A, 197); G., F. & A. R. Co. *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948); *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 769 (92 S. E. 527).

2. This brings us to consider the acts of Congress applicable to the present controversy. The act of March 4, 1915 (c. 176, 38 Stat. 1196), known as the Cummins act, requires the carrier, receiving property for transportation in interstate commerce, to issue a receipt or bill of lading therefor; and provides that the carrier "shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it." This act further provides that the carrier shall be liable "for the full actual loss, damage, or injury to such property caused by it, . . notwithstanding any limitation of liability, or limitation of the amount of recovery, or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission." By the act of August 9, 1916, c. 301, 39 Stat. 441, known as the Cummins amendment, it is provided that the part of the act of March 4, 1915, fixing the carrier's "liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery, or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, first, to baggage carried on passenger-trains or boats, or trains or boats carrying passengers; second, to property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required, by order of the Interstate Commerce Commission, to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or

released." 4 Fed. Stat. Ann. (2d ed.) 507. So if the shipper, in delivering property to an express company for carriage, declares its value, or if its value is agreed upon in writing as the released value of the property, and the property is transported at rates expressly authorized or required by order of the Interstate Commerce Commission, applicable to such declared or released value, the shipper can not recover for loss of, or damage to, such property beyond the value so declared or agreed upon.

3. To make such declaration or agreement of value effective and binding upon the shipper, it it not essential that the writing containing such declaration or agreement be signed by the shipper. It is sufficient if the carrier's receipt or bill of lading, given to the shipper on receipt of his goods for shipment, contains such declaration of value, or agreement as to the released value, and the shipper accepts, receives, and acts upon such receipt or bill of lading. The receipt or bill of lading becomes binding upon the shipper by his acceptance thereof, he being presumed to know and accept the terms and conditions of the written receipt or bill of lading. Missouri &c. R. Co. v. McCann, 174 U. S. 580 (19 Sup. Ct. 755, 43 L. ed. 1093) ; In the Matter of Bills of Lading, 52 I. C. C. 671; American Railway Express Co. v. Lindenburg, 260 U. S. 584 (43 Sup. Ct. 206, 67 L. ed. 414).

4. If in the present case there was such declaration of value, or an agreement as to the released value of the goods shipped, then the shippers could not escape the effect of such declaration or stipulation by bringing an action of trover for the recovery of the goods shipped, thus treating as a conversion the loss of the goods by the carrier and its refusal to deliver them on demand. If a suit could not be maintained for damages against the carrier for loss of the goods, then an action of trover would not lie for a recovery beyond the declared or stipulated released value. G., F. & A. R. Co. v. Blish Milling Co., 241 U. S. 190 (supra). "The effect of a stipulation in an interstate express receipt, that liability is limited to $50 for any shipment of 100 pounds or less, can not be escaped by suing in trover and laying the failure to deliver as a conversion." American Railway Express Co. v. Levee, 263 U. S. 19 (44 Sup. Ct. 11, 68 L. ed.).

5. Applying the above principles, the trial judge erred in giving the jury the instruction of which the express company com-

plains in its motion for new trial, and in its application to this court for certiorari. If the shippers had declared the value of the goods shipped or had agreed upon a released value thereof at the time of the shipment, and the goods had moved under the tariff rates of the company applicable to such declared or agreed value, this instruction would require a reversal of the judgment of the Court of Appeals. Likewise, if the shippers had declared the value of their goods at the time of shipment, or had agreed upon a released value thereof, then the trial court would have erred in rejecting the company's schedule of rates applicable to such declared or agreed value. Southern Express Co. *v.* Byers, 240 U. S. 612 (supra). But we are of the opinion, for the reason hereinafter stated, that this erroneous charge and this rejection of the schedule do not require a reversal of the judgment of the Court of Appeals.

6. This brings us to consider the serious and troubling question in this case; and that is, whether the shippers made such a declaration of the value of their goods or agreement as to their released value as will prevent them from recovering their full value. To enable the express company to establish its defense in this case, it is fundamental and essential that the shippers either declared the value of their property or agreed with the company as to its released value, at the time the contract of shipment was entered into. Said declaration or agreement must be made to appear, before a carrier can successfully claim the benefit of such a limitation, and relief from full liability. Cincinnati &c. R. Co. *v.* Rankin, 241 U. S. 319 (36 Sup. Ct. 555, 60 L. ed. 1022, L. R. A. 1917A, 265). The undisputed evidence is that the shippers made no such declaration or agreement when their goods were delivered to the carrier for transportation. When they were so delivered, the company's agent prepared and signed a receipt therefor. This receipt did not contain any declaration of the shippers as to the value of the goods; but did contain an agreement as to their released value. But the shippers knew nothing about its preparation and execution, and the same was not delivered to them until four or five months after the shipment was made. At that time the goods had been lost, and the shippers got this receipt for the purpose of enabling them to trace the shipment or to make a claim for the value of the goods if they were lost. On the trial of the case the shippers introduced this

receipt. Under these circumstances, was there any agreement between the shippers and the company as to the released value of the goods, which would prevent the shippers from recovering their full value? As we have seen above, if this receipt had been delivered to the shippers and accepted by them at the time these goods were delivered to the carrier for shipment, then they would have been presumed to know its contents and to accept the terms and conditions of the receipt. Would acceptance of the receipt after the loss of the goods by the carrier have relation back to the time of the delivery of the goods to the carrier for shipment, and constitute an agreement as to their released value, and thus prevent the shippers from recovering of the carrier for the loss of the goods more than such value? We do not think so. Counsel for the express-company confidently rely on the case of Atchison &c. R. Co. v. Robinson, 233 U. S. 173 (34 Sup. Ct. 556, 58 L. ed. 901), to support the proposition that the shippers in this case are bound by the contract of shipment expressed in this receipt. That case is distinguishable from the one at bar, in two particulars. In the first place, the horse involved in that case was transported under bill of lading signed by the shipper, and providing for a limited liability of $100 for a horse injured or killed. It is true that, after the car in which the horse was being transported started from the place of loading, the agent of the company presented to the shipper a printed contract, made in conformity to the schedules filed with the Interstate Commerce Commission, without calling his attention to its provisions, without informing him of its contents, and without procuring his assent to the terms therein stated. Thus a full and formal contract for the transportation of the horse was entered into between the shipper and carrier. In the second place, the shipper paid the freight for the transportation of this horse on the basis of the limited-liability contract. Under these circumstances the Supreme Court of the United States held: "The shipper, as well as the carrier, is bound to take notice of the filed tariff rates; and so long as they remain operative they are, in the absence of attempts at rebating or false billing, conclusive as to the rights of the parties;" and that "An oral agreement can not be given a prevailing effect which will be contrary to the filed schedules." The controlling fact in that case is, that the shipper paid freight for the transportation of his horse at rates applicable

to the released valuation. In the case at bar the receipt was not signed by the shippers. It was not received and accepted by them as evidencing a contract of shipment at the time the goods were delivered to the carrier for transportation or during the progress of that transportation. They did not receive this receipt until after the loss of their goods. Furthermore, in this case the shippers did not pay for the transportation of these goods rates of freight based upon a reduced valuation. The goods were shipped, charges collect. In the Robinson case the Supreme Court of the United States based its decision upon two facts: that the shipper signed a bill of lading containing a limited liability agreement, and payment of the freight on the horse shipped under the carrier's schedule of rates applicable to reduced valuation, which the shipper was bound to know and by which he was bound. We do not think that the decision in that case concludes the shipper in this case. We are of the opinion that a carrier receiving goods for transportation, without a declaration as to their value by the shipper, or without an agreement with him as to their value, and in the absence of a demand by the carrier for a declaration of such value by the shipper, should transport such goods upon rates applicable to their full value, and in case of loss will be required to pay to the shipper the full value of the goods. To hold otherwise would permit the carrier to make the declaration of value, and permit him to make a notation in the receipt of a released value without the knowledge, actual or constructive, of the shipper, and thus bind the shipper, although the latter had made no declaration of the value of the goods delivered to the carrier for transportation, or any agreement as to their released value. Such a declaration or agreement, in a receipt or bill of lading, prepared by the carrier at the time of the receipt of the goods, but not delivered to the shipper at such time and not until after the loss of the goods, will not avail to enable the carrier to set up the defense of limited liability, when in fact the shipper made no such declaration or agreement. While the ruling made by the Court of Appeals in the first headnote of its decision in this case is too broad as to interstate shipments, we think the result reached by the Court of Appeals is correct, and that its judgment should be affirmed.

*Judgment affirmed. All the Justices concur.*