FLESHNAR & ADAR *v.* SOUTHERN RAILWAY COMPANY.

1. Since the passage of the Carmack amendment to the Federal act regulating commerce (U. S. Comp. St. §§ 8604a, 8604aa), the bill of lading issued in accordance with that act constitutes the entire contract. St. Louis &c. Ry. Co. *v.* Starbird, 234 U. S. 596, 597 (37 Sup. Ct. 462, 61 L. ed. 917); *Central of Georgia Railway Co.* v. *Yesbik,* 146 *Ga.* 769 (92 S. E. 527).

2. The effect of an express contract made for the purpose of interstate transportation must be determined in the light of the Federal act to regulate commerce, as amended. Rights and liabilities in connection therewith depend upon acts of Congress, the bill of lading, and common-law principles as construed and enforced by the Federal courts. "The Federal statute supersedes the statute of this State (Civil Code, § 2752), in so far as it conflicts with the Federal statute and applies to interstate shipments." *Central of Georgia Ry. Co.* v. *Yesbik,* supra; *Southern Ry.* v. *Morris,* 147 *Ga.* 729 (95 S. E. 284).

3. The Carmack and Cummins amendments to the act to regulate commerce (U. S. Comp. St. §§ 8592, 8604a, 8604aa) modify the common-

law applicable to the initial carrier, and do not undertake to deal with the law theretofore applicable to connecting or terminal carriers. *Central of Georgia Ry. Co.* v. *Yesbik,* and *Southern Ry. Co.* v. *Morris,* supra.

4. "Transportation, as regulated by the act to regulate commerce, includes the services of a connecting carrier as warehouseman of the goods after arrival at point of destination and before actual delivery to the consignee." Southern Railway Co. *v.* Prescott, 240 U. S. 632 (36 Sup. Ct. 469, 60 L. ed. 836).

5. In an interstate shipment such as indicated in the question propounded, the initial carrier is liable if the goods are lost or injured, destroyed, or converted by a connecting carrier when acting as warehouseman under such facts as render such terminal carrier liable.

### No. 4671. April 14, 1925.

The Court of Appeals certified (in Case No. 15265) the following question: This was a suit by Fleshnar & Adar against the Southern Railway Company, to recover damages for the alleged loss of goods shipped by them. The case was tried upon the following agreed statement of facts: "On March 7, 1922, the plaintiff, a partnership, delivered to the Southern Railway Company, in Atlanta, Georgia, a certain shipment of shoes consigned to H. Rothenberg, New York City. Said shipment was refused by the consignee, and the consignors were not notified that the shipment had been refused until after the same had been sold for charges. Fleshnar & Adar, the plaintiff, have been in business in Atlanta, Georgia, at the same address, to wit, 154 Decatur Street, in said city, for more than fifteen years. The defendant agreed to handle said shipment. We agree that the items set out as bill of particulars in plaintiff's suit are correct, and that the original or copy bills of lading, covering same, may be admitted, and that correspondence between plaintiff and defendant, including copy of letters, may be admitted; the same are identified as copies of the originals. Title to the goods was in and remained in Fleshnar & Adar at all times. This shipment moved from Atlanta, Georgia, on March 7, 1922, via Southern Railway Company, and by said Southern Railway Company was delivered to its agent, the Pennsylvania Railroad, consigned to H. Rothenberg, 221 Canal Street, New York. The shipment arrived in New York on March 15, and consignee was notified that the goods were stored with Duvall & Company, 341 Spring Street, New York, on March 27, 1922. On June 19, 1922, a notice was sent by the Southern Railway Company to the consignor, advising that the shipment arrived at the destination on

March 15, and on March 20 was stored with Duvall & Company, where it remained unclaimed. In reply to this letter the consignor on June 29, 1922, requested the Southern Railway Company to call back the shipment in question. The notice of June 19, 1922, was the first notice which the consignor had of the failure of the consignee to accept said shipment; and this was after the goods had been sold by the Pennsylvania Railroad. The contract for the shipment was made between Fleshnar & Adar, the plaintiff, and the Southern Railway Company, the defendant." The bill of lading under which the property was shipped contained the following provision: "Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be at the option of the carrier removed to and stored in a public or licensed warehouse at the cost of the owner, and there sold at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage." Under these facts was the initial carrier, the Southern Railway Company, liable for the negligence or conversion of its connecting carrier where the negligence or conversion occurred after the goods were stored in a warehouse?

*Bell & Ellis* and *George L. Bell Jr.*, for plaintiffs.

*Wharton O. Wilson*, for defendant.

GILBERT, J. 1-3. The first, second, and third headnotes do not require elaboration.

4. The Hepburn amendment (34 Stat. 584, c. 3591, U. S. Comp. St. § 8563), to the "act to regulate commerce" contains the following provision: "The term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported. . . All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, shall be just and reasonable;

and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful." The bill of lading issued for the shipment of goods forming the basis of this suit provides, among other things, that "every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns." The shippers signed their names on the face of the bill of lading, certifying that the articles "are packed in standard railroad containers." The bill of lading also contained the following: "Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be at the option of the carrier removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage." The meaning of that portion of the Carmack amendment just quoted, as applied to a shipment under a standard bill of lading, such as was issued in our case, was discussed by the Supreme Court in the case of Cleveland &c. Ry. *v.* Dettlebach, 239 U. S. 588 (36 Sup. Ct. 177, 60 L. ed. 453), and in Southern Ry. Co. *v.* Prescott, 240 U. S. 632 (36 Sup. Ct. 469, 60 L. ed. 836). Mr. Justice Hughes, speaking the unanimous opinion of the Supreme Court in the latter case, reaffirming what was said in the former case, said: "By the act to regulate commerce (§ 1) the 'transportation' it regulates is defined as including 'all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported.' It is made the duty of the carrier 'to provide . . such transportation upon reasonable request therefor.' All charges made 'for any service' rendered in such transportation must be 'just and reasonable.' Section 6 requires that the carrier's schedules, printed as provided, 'shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and

all other charges which the Commission may require, all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or. consignee.' And it is further provided, in the same section, that no carrier shall 'extend to any shipper or person any privileges or facilities in the transportation'—that is as defined—'except such as are specified in such tariffs.' The bill of lading in accordance with the published regulations provided that 'every service' to be performed under it, including the service of connecting or terminal carrier, should be subject to the conditions specified, and among these was the express condition governing the company's responsibility as warehouseman for property not removed within forty-eight hours after notice of arrival. Such a retention of the goods was undoubtedly a terminal service forming a part of the 'transportation' in the sense of the Federal act and governed by that act." The construction placed upon the statute by the Supreme Court being absolutely controlling upon this court, we indulge in no discussion of our own upon that point.

5. It is somewhat surprising to find that the identical question propounded by the Court of Appeals has not been decided by the Supreme Court of the United States. If it had been, of course, the question would not now be presented to this court, because on such a question the decision of the Supreme Court would be controlling. In the briefs of counsel a number of decisions rendered by State courts are presented for consideration. Decisions by courts of other States are always entitled to and do receive great respect. While not binding upon this court, they often afford great assistance in arriving at a satisfactory conclusion. In the present instance, however, a Federal question only is involved; and in such cases, where State courts reach conclusions different from those of the Federal court, the latter must be accepted. The Federal statute regulating interstate commerce, as amended by the Carmack and Cummins acts, in so far as material to our question, is as follows: "Any common carrier, railroad or transportation company subject to the provisions of this act receiving property for transportation from a point in one State . . to a point in another State . . shall issue a receipt or bill of lading there-

for, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose . . lines such property may pass, . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; and any such common carrier, railroad or transportation company so receiving property for transportation from a point in one State . . to a point in another State . . shall be liable to the lawful holder of said receipt or bill of lading . . for the full actual loss, damage, or injury to such property caused by it or by any such · common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass . . when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading or in any contract, rule, regulation, . . and any such limitation, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void." 4 Fed. Stat. Ann. 506.

Under the facts stated, the issue is narrowed to the question whether the Southern Railway Company, the initial carrier, is liable for the "negligence or conversion of its connecting carrier, where the negligence or conversion occurred after the goods were stored in the warehouse" by such connecting carrier. It will be observed that "negligence or conversion" on the part of the connecting carrier, which in this case was the terminal carrier, is assumed. Accordingly, this court will not consider whether or not, under the facts stated, the terminal carrier was guilty of negligence or a conversion of the property. Likewise the question, as propounded, settles the fact that the goods were "stored in a warehouse," and that the warehouse was operated by a third party, not the carrier. Also, the goods were sold while stored in the warehouse of the third party by order of the terminal carrier. We think the legal effect is the same, in so far as our question extends, whether the carrier stored the goods in its own warehouse or in the warehouse of a third party. The defendant contends

that if the terminal carrier was bound only as warehouseman, then the defendant's duty as a common carrier strictly speaking had ceased, and consequently the provisions of the Federal statute did not make the initial carrier liable. The Court of Appeals invites our attention, in this connection, to the cases of Southern Railway Co. *v.* Prescott, and Cleveland &c. Ry. Co. *v.* Dettlebach, supra. It should be noted that in both of these cases suit was brought against terminal carriers, and, as stated in the third headnote, the Federal act regulating commerce, as amended, does not deal with or modify the law in regard to the duty of terminal carriers. However, in these two cases we think it is shown that a common carrier may owe a duty to a shipper in more than one capacity, for instance, that of a carrier's duty strictly, and also that of a warehouseman. These duties differ. In the one case the carrier owes the duty of an insurer; in the other he does not. The duty required may differ in other respects; for instance, if acting in the capacity of warehouseman the carrier may be liable for negligence. We are not now required to decide these subsidiary questions. See Southern Ry. *v.* Prescott, supra (240 U. S. 640). Nevertheless we deem it settled by the Prescott and Dettlebach decisions that a carrier or transportation company, though acting as a warehouseman, is still performing one of the duties of a carrier or transportation company. Under the Federal act quoted above, the initial carrier is liable to the holder of the bill of lading for the full actual loss or damage to the property caused by "any common carrier, railroad or transportation company to which the property was delivered." "The spirit of the interstate-commerce act with the Carmack amendment (Act Cong. Feb. 4, 1887, c. 104, § 20, 24 Stat. 386, as amended by act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. §§ 8604a, 8604aa]) is to treat connecting lines of transportation as one line so far as the shipper is concerned, and to compel the different companies forming a through route to deal as a unit with the shipper and then to adjust all differences as to individual liability among themselves." Lancaster *v.* Schreiner, 277 Mo. 527 (212 S. W. 19). "In order, therefore, to determine whether the initial carrier is liable in the present case, we have only to determine whether it would have been liable for the loss if it had owned and operated the connecting lines as one railroad; and since, under the Hepburn act

[34 Stat. 584, c. 3591] the initial carrier may make any defense which was available to any connecting carrier on whose line the loss occurred" (Riverside Mills *v.* Atlantic Coast Line R. Co. (C. C.) 168 Fed. 987; Hogan Milling Co. *v.* Union Pacific, 91 Kan. 788, 139 Pac. 399), it follows that whatever liability the terminal carrier incurred, under the facts of the case, that liability attaches to the initial carrier.

Since it has been shown that the handling of the shipper's goods in the capacity of warehouseman was part of the transportation for which the initial carrier became responsible, we necessarily reply that the latter is liable, assuming, as the question does, that the terminal carrier was liable. Briggs Hardware Co. *v.* Aroostook Valley R. Co., 117 Me. 321 (104 Atl. 8), and Winget *v.* Grand Trunk Western Ry. Co., 210 Mich. 100 (177 N. W. 277), were cases decided by State courts in which the above conclusion was reached. See also 1 Roberts, Federal Liability of Carriers, 592, § 338 et seq. There are cases decided by State courts contrary to what has been decided above, but they do not accord with the construction given by the Supreme Court to the term "transportation" as employed in the Federal statute. Moreover it will be observed that the shipper does not seek to hold the initial carrier liable for injury or conversion of the property by Duvall & Co., public warehousemen. Although the goods were stored, not in a warehouse of the terminal carrier, but in a public warehouse, they were sold by virtue of an order or instructions from the terminal carrier. The question states that the goods were "sold by the Pennsylvania Railroad." Therefore, irrespective of where the goods were sold, the sale was the act of the terminal carrier; and whatever the liability of the terminal carrier in making the sale, it is the same as if the sale had been ordered by the initial carrier. If the lines of the initial carrier had been extended from Atlanta, Ga., where the goods were received for shipment, to the city of New York, where they were transported for delivery to the consignee, and the Southern Railway Company had disposed of the goods in exactly the same way as was done by the Pennsylvania Railroad Company, the liability would be exactly the same. Compare Georgia, Florida & Alabama Ry. Co. *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948), and *A. G. S. R. Co.* v.

*McKenzie,* 139 *Ga.* 410 (77 S. E. 647, 45 L. R. A. (N. S.) 18), where similar though not identical questions were discussed.

*All the Justices concur.*