## GULF, C. & S. F. RY. CO. v. DOWNS.
### No. 11443.

Court of Civil Appeals of Texas. Dallas.
March 24, 1934.

Rehearing Denied April 21, 1934.

W. P. Donalson, of Dallas, and Wren, Pearson & Jeffrey, of Fort Worth, for appellant.

Smithdeal, Shook, Spence & Bowyer and J. Louis Shook, all of Dallas, for appellee.

BOND, Justice.

Appellee, R. C. Downs, hereinafter called plaintiff, instituted this suit against appellant, Gulf, Colorado & Sante Fé Railway Company, hereinafter called defendant, to recover the value of cotton shipped but not delivered, alleging and proving delivery to the carrier in apparent good condition, and failure of the carrier to deliver at destination. Defendant's answer negatives all grounds of negligence, and that a fire-packed bale of cotton caused the damage at destination.

The case was tried to a jury, and, in response to special issues, it found that the shipment contained no fire-packed bale of cotton at the time it was delivered to defendant.

Defendant's first assignment of error challenges the trial court's action in refusing to grant its motion for an instructed verdict, duly and timely presented, because of the uncontroverted testimony negativing all causes of the fire, and affirmatively showing that the loss was caused by fire having been packed in a bale before delivery, a latent condition of the shipment. We are of the opinion that this assignment must be sustained.

The testimony is, as stated, uncontroverted. On September 11 and 12, 1928, plaintiff delivered to defendant 28 bales of cotton at Brookeland, Tex., for transportation to San

Augustine, Tex., a distance of 36 miles. Plaintiff's agent, D. E. Willis, placed the cotton on defendant's depot platform, saw it marked, tagged, and checked in the car, apparently in good condition; defendant issued its unconditional bills of lading, loaded the cotton in apparently a new box car, and the doors were securely closed and sealed, leaving no crevices or cracks through which sparks of fire could pass. Before and after it was moved, the car was inspected by the train operatives for physical defects and found intact; it left Brookeland at 7:55 p. m. September 12th, and on the run no hot boxes developed, the train did not come in contact with any fire, and did not pass any burning woods or forest fires. On arrival at San Augustine at 10:45 p. m., the car was left on a siding until next morning, and was then placed on a compress track for unloading. Between 7:30 and 8 on the morning of September 13th, the car was again inspected, found sealed and in good condition. Shortly after 12 on the same day, the seals still intact, smoke was found coming out of the north end of the car, through a burning hole, and, when the doors were opened, a flame of fire flashed over the interior of the car and its contents. On extinguishing the fire and removing the cotton, it was found that the bagging was burned off, the cotton burned uniformly on the outside and about to the same extent, with the exception of one bale. This bale was in the north end of the car. The record shows that 20 bales of the shipment were ginned on the day it was loaded, and the balance only a few days before.

The following is a complete statement of the testimony bearing upon the one bale, contended by defendant to have been fire packed, the alleged sole cause of the destruction.

Plaintiff testified that he had had experience and made personal observation of fire-packed bales of cotton; i. e., cotton which had been ignited in the ginning process and packed in the bale, and that, in his opinion, fire packed in a bale will burn for a considerable time on the inside before reaching the outside.

R. H. Innis, an expert witness, testified that he had had 25 years' experience in the employ of the Bureau of Explosives, studied the chemical properties of fire and inflammables, at the instance of the Interstate Commerce Commission, investigated accidents to articles in transitu, such as cotton and other inflammables, for the purpose of determining the cause and origin of the fire, as a means of knowing how to prevent the recurrence thereof; that he had investigated and reported on some ten or twelve fires caused by fire-packed bales of cotton. In this connection, he testified: "* * * That if a bale of cotton catches on fire, and the fire is put out, and it is discovered when the fire is put out that, in addition to the general burning around the bale, there is a hole in the bale with ashes all around it, the general description of which is a small outlet at the edge of the hole and the larger body of it inside, certainly the fire that caused the hole originated inside the bale."

George R. Todd testified that one of the bales was burned considerably worse than the others; the others were apparently uniformly burned. This one bale had a big hole in it about the center, 12 or 15 inches deep, about 3 or 4 inches in diameter, and the flaring about 8 or 10 inches downward on the inside. The hole was shaped something like an ordinary pitcher, small at the top and larger at the bottom.

T. A. Jackson testified that, after the bale had been extinguished, the 28 bales of cotton were found burned uniformly, except one. In this one, there was a round hole burned in the bale about 4 inches in diameter, extending to the center of the bale, and in different dimensions. In the center there was a big round hole, full of ashes and burned cotton. The ties were loosed, the ashes and burned cotton removed, thus making the hole more discernable.

H. E. Taylor testified substantially that, on the morning after the fire, he saw a bale of cotton which had come out of the car; that it had a hole burned out from the center of the bale; that it was larger in the center and burned out small at the top; that the hole was about the size, as he termed it, of a water bucket.

Accompanying the record, as exhibits, are two original photographs, made of the fire-packed bale of cotton, which, in our opinion, substantiates the testimony of the witnesses. As disclosed by the photographs, the hole in the interior of the bale is clearly visible, and several other bales included in the shipment are shown to have been burned more or less uniformly.

The related testimony is all we find in the statement of facts as to the possible cause, circumstance, or condition of the fire. Plaintiff offered no testimony showing, or tending to show, how the cotton might have become ignited, or any circumstance or condition under which the car or contents were in any wise exposed to fire in transit. Plaintiff did not challenge any of the testimony, content-

ing himself on cross-examination by showing that the witnesses offered by defendant were employees and ex-employees of the railroad company.

Thus, summarizing, we find the uncontroverted testimony to be that the car was in good condition, the doors were closed and sealed, the car did not come in contact with, or in proximity to, any fire in the course of transportation, and its physical condition was such that the fire could not have gotten in from the outside; that plaintiff's agent supervised the loading, found it in apparently good condition; that, on discovery of the fire, smoke was coming from the inside through a burned hole in the car, located near the fire-packed bale of cotton; and that the shipment recently ginned contained the latent infirmity.

■ Cotton is the most important commodity of this state. Upon being ginned, it is pressed into bales of such density and is a commodity of such nature as that fire originating upon the surface of such bale will not penetrate into and core the center. It will not burn a hole 12 or 15 inches deep to the center, in a funnel or pitcher shape, and at the same time do only superficial damage to the other portions of the bale. This innate nature of cotton is a matter of which courts may well take judicial knowledge. In our opinion, such condition indicates as strongly as circumstances can that the fire began and burned longer where the hole was larger, and forged to the outside, where the hole was smaller. This is clearly what is termed a "fire-packed" bale of cotton. Thus, viewing the testimony, we are of the opinion that reasonable minds cannot differ as to the cause and origin of the fire.

■ As stated above, no attack was made upon the reputation of the witnesses for veracity and, in reading their testimony, there is nothing to indicate a basis upon which to disbelieve them, except the innuendoes that they worked for a railway company. We challenge the thought that employees of railways are not worthy of belief, or that their testimony is abase to the utmost verity. Within bounds, the jury may ignore the testimony of witnesses, but they cannot arbitrarily disregard uncontroverted evidence, which comports with reason and portrays facts within general knowledge.

■ We recognize the rule that, when property is delivered to a carrier in good condition at the initial point of shipment, and is not delivered, or, if delivered at the point of destination, is in bad condition, negligence will be presumed, and, unless such presumption is rebutted by the carrier, a judgment for damages will be sustained. This rule is based on sound principles of law and justice. It is almost invariably the case that it is impossible for a shipper to prove negligence in handling; the carrier alone being in position to show how the property is handled. In this case, the judgment of the lower court rested exclusively upon presumptive negligence. Thus, anent to the rule that the burden was upon defendant to overcome this prima facie presumption, in that it was free of negligence, the damage resulted from an inherent defect or vice in the shipment. When this was done, the burden of proof shifted to plaintiff, and, under such circumstances, plaintiff cannot rely for recovery alone on the presumptive rule of negligence.

■ A carrier is not liable for loss, or damage, to a shipment resulting from a defect or vice in the property shipped, and not caused or contributed to by the negligence of the carrier. 8 Tex. Jur. § 153; 10 C. J. § 576; G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45. Spontaneous combustion resulting in loss or damage casts no liability on the carrier. Chevallier v. Straham, 2 Tex. 115, 47 Am. Dec. 639; 10 C. J. 122. Obviously, fire packed in a bale of cotton is a defect or latent infirmity of the commodity, and such loss or damage resulting therefrom is not actionable. By what means, then, can the fact that one of the bales was fire packed, and that defendant was not negligent, be reconciled? Necessarily, as in this case, the defense rests on circumstantial evidence. Direct proof cannot be made by any one who saw the spark of fire left in the interior of the bale, or proof that smoke or fire was seen or smelled when the cotton was loaded. Evidently, had such been known, neither the carrier nor the shipper would have permitted the shipment to proceed, and the knowledge on the part of the carrier would completely destroy the defense. Thus the only method of proof is that frequently and convincingly employed, i. e., negativing all other causes which might have produced the fire, showing the circumstances and conditions existing at the time the fire first evidenced itself, showing the physical facts and circumstances present subsequent to the fire, and reasoning from results to cause through expert and experienced testimony. This method of proof was employed by defendant, and, we believe, is so convincing as to exclude all reasonable hypothesis as to defendant's negligence in the transportation of cotton.

Defendant assigns error on the action of the court in refusing the proffered testimony of the witness Todd, to the effect, that on two separate occasions he saw bales of cotton burned and had holes in them, one of the bales was burned in much the same manner as in the one under investigation, and the other had a larger hole in it. In both instances, the holes were larger at the center of the bale, and smaller where the fire came out. From these instances, and with many years of general experience in handling cotton and working in gins, the hole in the instant bale indicated that the fire originated inside the bale, giving as a reason that a bale of cotton is so tightly packed that, if it catches fire on the outside, it will burn uniformly around the bale, and will not burn in holes to the center of the bale. In other words, it will not burn in, but will burn more or less uniformly on the outside.

Defendant also assigns error on the action of the court in refusing the witness Innis to testify pretty much to the same effect as the proffered testimony of Todd, in that, after qualifying under the rule relating to expert testimony as to the origin and cause of fires in cotton and other inflammables, he was asked to give his reason from a practical and scientific standpoint why fire in the center of a bale of cotton will burn toward the surface. The voir dire examination of the witness, outside of the presence of the jury, shows what his answer would have been had he been permitted to relate, in that the fire originating in the interior of the bale will slowly find its way through the crevices and irregularities in the packing structure to the surface in search for a great and more abundant supply of oxygen. The density of the packed bale to a great extent excludes oxygen, and fire will not penetrate the cotton where the oxygen is less abundant. Oxygen is an indispensable element of fire; thus the course of the fires is governed by the quantum of oxygen.

▐ The excluded testimony of Todd and Innis, in our opinion, was relevant. The presence of a fire-packed bale in the shipment was the issue to be established; thus any fact or circumstance logically related to that issue, either directly or by inference which conduces, to any reasonable degree to establish the probability of that issue, should go to the jury. Hussmann v. Leavell & Sherman (Tex. Civ. App.) 20 S.W.(2d) 829. Ordinarily, causes, circumstances, or conditions shown to have existed in regard to an occurrence, and not shown to have been substantially the same as or similar to that in question, is not admissible, but, where the fact or occurrence in ques-

tion is substantially the same as or similar to the fact or occurrence as that shown to be or existing, then such fact or occurrence is admissible. "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with the other facts, renders the existence of the other certain or more probable." Jones on Evidence, vol. 1, p. 135. The course and condition of the burning of the one fire-packed bale of cotton is not dissimilar to the course and condition of the burning of another fire-packed bale. The result is shown to be the same. In all instances, the fire burned from the interior to the surface, and left similar results. The two bales, within the knowledge and experience of the witness Todd, had been burned as a result of being fire packed, and had left on them evidence or markings like or similar to the evidence or markings on the bale involved in this case; thus the excluded testimony was relevant, rendering in the present case the existence of the fire-packed bale as the cause of the fire certain or more probable.

 The range and force of expert testimony is to explain to the jury things not capable of being understood by the average person. His special or technical knowledge license him to express an opinion of cause and effect of things with which he is familiar. The weight of such an opinion necessarily rests upon the reasons or explanations given by such witnesses in support of the opinion. Thus, "An expert witness, like any other witness, may be asked on direct examination, or may be required to state the grounds of his opinion, i. e. the general data which forms the basis of his judgment upon the specific data observed by him." Wigmore on Evidence, vol. 1, § 562. Handwriting experts express their opinion, but such would carry little weight if they were not permitted to give the reason, if they can, as to the genuineness of the writing in dispute. In the case of Austin & N. W. Ry. Co. v. McElmurry (Tex. Civ. App.) 33 S. W. 249, 250, an action for personal injuries, the court held: "He (witness) could give any reason within the range of expert testimony for his opinion as to the reality of the plaintiff's complaints. * * *" Thus, under such rule, the witness Innis, after qualifying as an expert and testifying upon the technical phase of fire and its relation to oxygen, and expressing his opinion as to the cause and effect of fire, was entitled, we think, to state reasons on which his opinion was based.

 Our conclusion is that there exists no evidence in opposition to defendant's reasona-

ble testimony, negativing all possible negligent causes for the fire and affirmatively showing the cause was due to latent defects in the shipment—a fire-packed bale of cotton. It therefore becomes the duty of this court to reverse the judgment of the lower court and here render judgment for the defendant, and it is so ordered.

Reversed and rendered.