33324. SEABOARD AIR LINE R. CO. *v.* HENRY CHANIN CORP.

DECIDED JUNE 22, 1951. ADHERED TO ON REHEARING JULY 18, 1951.

*MacDougald, Troutman, Sams & Schroder, Gilmer A. MacDougald,* for plaintiff in error.

*McLennan & Cook,* contra.

Worrill, J. Henry Chanin Corporation brought suit against Seaboard Air Line Railroad Company in the Civil Court of Fulton County, Georgia, for damages alleged to have resulted from fire in a shipment of 65 bales of No. 1 white picker textile waste, weighing 40,487 pounds. The carload of this waste was shipped on a through bill of lading from East Point, Georgia, to Englander Company Inc., Pittsburgh, Pennsylvania, the bill of lading having been issued on December 28, 1949, by Central of Georgia Railway Company, routed by Seaboard Air Line Railroad Company and other lines, in car Erie No. 90911. The goods were partly damaged and destroyed by fire at Whitmire, South Carolina, on the morning of December 31, 1949. The defendant carrier defended on the ground that the fire was caused by a "fire packed" bale in the shipment and introduced evidence to that effect and also in support of its contention that it was free from negligence.

The jury returned a verdict for the plaintiff in the amount sued for. The defendant filed a motion for new trial on the usual general grounds, and by amendment added two special grounds. The court overruled the motion for new trial, and the exception here is to that judgment.

■ The first special ground of the motion for new trial complains because the court charged substantially the provisions of the Code, § 18-102, as follows: "Common carriers now, the Seaboard Railroad Company is a common carrier—as such are bound to use extraordinary diligence, and in case of loss the presumption of law is against them and no excuse avails the railroad company unless the loss was occasioned by the act of God or the public enemies of the State." One of the several grounds urged is that the charge was contrary to the contract of carriage, to wit, the bill of lading, and was inapplicable and erroneous for the reason that the duties of the carrier in interstate commerce are regulated and determined by the acts of Congress and orders of the Interstate Commerce Commission in

pursuance thereof and not by State law. The Interstate Commerce Act, 49 U. S. C. A. § 20 (11), provides in part: "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . to a point in another State . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . when transported on a through bill of lading, and no contract, receipt, rule, regulation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." Pursuant to the authority contained in this act the Interstate Commerce Commission has prescribed uniform bills of lading. The construction, interpretation and enforcement of the terms of such bills of lading present Federal questions, and the rights of shippers and the duties of and defenses available to carriers depend upon applicable Federal law and conflicting State laws have no application. Illinois Steel Co. *v.* B. & O. R. Co., 320 U. S. 508, 510 (64 Sup. Ct. 322, 88 L. ed. 259). See also Missouri Pac. R. Co. *v.* Porter, 273 U. S. 341, 345, 346 (47 Sup. Ct. 383, 71 L. ed. 672); Crump *v.* Thompson, 171 F. 2d, 442, 445, 446; *Central of Georgia Railway Co.* v. *Yesbik,* 146 *Ga.* 769 (2) (92 S. E. 527); *American Railway Express Co.* v. *Estroff,* 159 *Ga.* 58 (1) (125 S. E. 40); *Fleshnar & Adar* v. *Southern Ry. Co.,* 160 *Ga.* 205 (127 S. E. 768). Section 1 (b) of the conditions of the bill of lading covering the shipment here involved, and which is in the form prescribed by the Interstate Commerce Commission, provides in part that "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay . . resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes."

Under a proper construction of this applicable contractual provision, where property has been delivered to a carrier for

interstate shipment, the carrier would, in case of negligence on its part in connection with the handling of such shipment, be liable for loss or damage to such property resulting from a vice therein. In case of loss or damage a presumption arises that the carrier has been negligent, but this presumption is rebuttable by the carrier.

Under the provisions of the Code, § 18-102, a codification of the common law, no question of negligence is involved. The law fixes upon the carrier an absolute liability as an insurer, from which it may free itself only by showing that the loss or damage was occasioned by "the act of God or the public enemies of the State." *Fish* v. *Chapman,* 2 *Ga.* 349 (4) (46 Am. D. 393); *Southern Express Co.* v. *Purcell,* 37 *Ga.* 103 (1) (92 Am. D. 53); *Central of Ga. Ry. Co.* v. *Lippman,* 110 *Ga.* 665 (1) (36 S. E. 202); *Cooper* v. *Raleigh & Gaston R. Co.,* 110 *Ga.* 659 (36 S. E. 240). Thus it will be seen that in applying this Code section a distinction must be made between shipments intrastate and those interstate, in which latter case the Federal law supersedes the State law and fixes the provisions of the uniform bill of lading as the contract. In the present case the defendant did not contend that the damage was caused by an act of God or the public enemies, and under the charge here complained of was deprived of the right to have the jury determine whether or not it had disproved negligence on its part in connection with the transportation of the goods, whereas under the controlling Federal law it was entitled to have this question decided. Under the Federal law if the jury should determine that the damage was caused by a defect or vice in the property, and that the carrier was not negligent the plaintiff would not be entitled to recover. Under the charge as given the defendant would be liable regardless of freedom from negligence unless it showed that the damage was caused by some vis major constituting an exception to liability. It is clear, therefore, that the excerpt was harmful and reversible error, and was not cured by any subsequent portion of the charge.

■ The second special ground of the motion for new trial complains that the court erred in charging the jury that if they found a verdict for the plaintiff the defendant carrier would also be liable for the reasonable expenses which the plaintiff in-

curred in reprocessing the cotton waste and getting it back to East Point, Georgia, "and getting it back to the destination that they originally intended it to go." It was contended that the charge was erroneous and injurious because the contract of carriage and the regulations of the Interstate Commerce Commission, which are a part thereof, specifically provide that the movant can not transport burnt cotton for a specified period of time, to wit, 10 days, and the record shows that the transportation expense was incurred within such period. It is shown by the record that on January 4, 1950, the defendant carrier wired the plaintiff to advise disposition of the shipment and that it would be necessary that it be held 10 days before reloading. Under the Interstate Commerce Commission's regulations, as shown by an extract in the record, in force throughout the period from December 28, 1949, to January 10, 1950, inclusive, burnt cotton "must not be offered for transportation until not less than 10 days have elapsed since the last evidence of fire in it." Accordingly, the defendant carrier could not legally deadhead, if liable, this damaged material back to the shipper at East Point, Georgia, for reprocessing until 10 days had expired after the last evidence of fire on December 31, 1949. The plaintiff, however, without waiting for the defendant carrier to deadhead or transport the shipment back to East Point, Georgia, saw fit to haul it away by truck, it being shown by the record that it was back at East Point, Georgia, on January 6, 1950. Having thus deprived the defendant carrier of the opportunity of returning the shipment in conformity with Interstate Commerce Commission regulations, if there was any obligation upon it to do so, the plaintiff can not require of the common carrier any refund of the expense incurred in hauling the material by truck. It follows that the court erred in charging the jury as to this item of expense and also in submitting to the jury the item of expense "in getting it back to the destination that they originally intended it to go," the evidence showing that the waste had been sold F. O. B. East Point, Georgia, and not F. O. B. Pittsburgh, Pennsylvania.

Upon rehearing the opinion has been rewritten with only the above rulings as to excerpts of the charge of the court, and as these require a reversal of the judgment no ruling is being made

by the court on the general grounds of the motion for new trial.

*Judgment of reversal adhered to on rehearing. Sutton, C.J., and Felton, J., concur.*

WORRILL, J. (Concurring specially on rehearing.) In addition to concurring in the judgment of reversal because of the errors in the charge of the court, I am of the further opinion that the evidence demanded a verdict for the defendant carrier, to demonstrate which I desire to set forth the following evidence in addition to that mentioned in the statement of facts hereinbefore.

The bales of cotton waste had been processed and packed by the plaintiff on the 27th and 28th of December, 1949, and the bill of lading was signed about 3 p. m. on the last named date. The car, loaded and sealed, was pulled out by the Central of Georgia Railway Company, and by it delivered to the Seaboard Air Line Railroad Company at 11:45 p.m. on December 28, 1949. It was included in a train which left Atlanta, Georgia, in the early evening of December 30, 1949, and at about 3 a.m. on December 31, 1949, when the car reached Whitmire, South Carolina, fire was discovered therein by one of the brakemen on the train who noticed a reflection of light or fire on the crossties as the car passed him during a switching operation. The car was disconnected from the train and the seals, which had remained intact, were broken on the doors and the fire quenched by the fire department of Whitmire. There was evidence for the plaintiff that there was no fire about its premises for 24 hours before and after the packing of the bales of waste, according to records kept by the corporation, no record being made unless there is a fire, and its shipping clerk testified that he did not see any indication, on inspection, that any of the bales had been burned or had fire therein and that he made a smell test and there was no evidence, by such means, of fire packing. The car in which the waste was loaded had a steel top and steel sides and the doors were "very similar to weather-stripped" doors, very tight. The flooring was double flooring, tongue and groove, and was approximately two inches in thickness. Fire had consumed or partly destroyed several bales of the waste, and one bale in particular was testified to as having been burned from the inside outwardly. The fire had burned a place in the floor

of the car and was oval in shape and had its longest dimension running across the car from side to side and was about the size of a man's body in length and breadth. The car had been inspected numerous times: On the morning of December 30th when it was found to be in good condition with no evidence of fire; on the evening of the 30th before it left the Atlanta area; prior to 12:10 a. m. on December 31st at Abbeville, South Carolina; at about 12:35 at Greenwood, South Carolina, and at about 2:30 a.m. at Clinton, South Carolina. The train had been pulled entirely by Diesel operation, and only one train using a steam engine passed it, and there was no evidence that it was emitting sparks or flame such as might tend to start a fire on the inside of the car containing the waste, if indeed it could penetrate it, and especially the inside of a bale of waste. There was considerable speculation or conjecture on the part of so-called expert witnesses for both sides as to what time might have elapsed before a fire-packed bale might ignite others in the shipment, but there was no positive testimony showing when or how the fire originated. An expert witness of many years' experience in explosives and investigation of fire in cotton and cotton waste testified that in his opinion the fire in question was caused by a fire-packed bale which he examined and described in detail in court, and which had burned from the inside out, there having been more burning on the inside than on the outside. Another witness testified that this bale had burned from the inside to the outside. While a witness for the plaintiff testified that the aforementioned expert, when examining the bales of cotton waste after they had been returned to East Point, Georgia, stated that "you couldn't tell any of the bales were fire-packed," there was no contradiction whatever that the bale had burned from the inside to the outside, where the burning was less.

The evidence as to the delivery of the cotton waste made out a prima facie case against the defendant. However, the evidence for the defendant conclusively showed freedom from negligence. Without establishing responsibility upon the defendant carrier after it had shifted the burden of evidence to the plaintiff, the case against it must necessarily fall. For a jury to find a verdict against the defendant on the theory that the bales, or one of them, had been ignited by a spark or sparks from a passing

steam engine, when there was no evidence that sparks were being emitted, and, furthermore, when the freight car in question was metal on its top and sides and its doors tightly fitting and sealed, would be to rely upon inferences too imaginary and fanciful to be upheld. Compare Davis *v.* Jefferson Standard Life Ins. Co., 73 Fed. 2d, 330, 332. "Evidence is said to be that which demonstrates and makes clear a question of fact at issue. Sufficient evidence is such as is satisfactory to the purpose— satisfactory in its legal sense,—such as satisfies the law as to the existence of a given fact; and if such evidence of the fact be not submitted, then the evidence may be fairly said to be insufficient to sustain a verdict based thereon." *Mallery* v. *Young*, 94 *Ga.* 804, 807 (22 S. E. 142). The evidence demanded, in my opinion, a verdict for the defendant carrier. It conclusively showed that it was free from negligence at all times, and there was no probative testimony connecting it with the fire before or after it had exculpated itself from negligence, but, on the contrary, a finding was demanded that the general fire was caused by the one especial "fire-packed" bale hereinabove described. If it be said that there was a conflict in the testimony as to whether or not the bale was "fire-packed," the answer is that human testimony can not overcome physical facts, and to assert that it was not "fire-packed" is to contend against the laws of physics and the common experiences of men as to the action of fire upon cotton. It was uncontroverted here that the particular bale had burned from the inside to the outside with less burning on the surface. See, on the subject of the invincibility of physical laws, the interesting discussion by Judge Powell in *Rome Railway & Light Co.* v. *Keel*, 3 *Ga. App.* 769 (60 S. E. 468), and also see *Atlantic & Birmingham Railway Co.* v. *Clute*, 3 *Ga. App.* 508 (60 S. E. 277). Fire simply does not, on coming in contact with cotton or cotton waste, penetrate to the interior of the bale to the neglect of the exterior and there burn a portion larger than the exit or mouth of the sluice or funnel. It is unnecessary to go into the details of the phenomenon. For a case strikingly similar on its facts see Gulf, C. & S. F. Ry. Co. *v.* Downs, Court of Civil Appeals of Dallas, Texas, 70 S. W. 2d, 318. In the decision of the Texas court in a cotton State, it was said: "Cotton is the most important commodity

450

in this State. Upon being ginned, it is pressed into bales of such density and is a commodity of such nature that fire originating upon the surface of such bale will not penetrate into and core the center. It will not burn a hole 12 or 15 inches deep to the center, in a funnel or pitcher shape, and at the same time do only superficial damage to the other portions of the bale. This innate nature of cotton is a matter of which courts may well take judicial knowledge. In our opinion, such condition indicates as strongly. as circumstances can that the fire began and burned longer where the hole was larger, and forged to the outside, where the hole was smaller. This is clearly what is termed a 'fire-packed' bale of cotton. Thus, viewing the testimony, we are of the opinion that reasonable minds cannot differ as to the cause of the fire. . . Obviously, fire packed in a bale of cotton is a defect or patent infirmity of the commodity, and such loss or damage resulting therefrom is not actionable."

If I am correct in the opinion that a verdict was demanded for the defendant carrier, then there would seem to be no need to rule on the objections to the charge of the court, but the judgment should be reversed on the general grounds of the motion for new trial.