## Wabash Railroad Company v. John W. Johnson.

1. NOTICE OF CLAIM—*when there is waiver of.* Held, from the particular facts in evidence in this case, that the provisions of a contract requiring notice of claim as an essential to its entertainment, was waived.

2. OBJECTION—*when, should be specific.* An objection to the form of a question rather than to its substance must be specific to avail.

3. SECONDARY EVIDENCE—*when, competent.* Where the originals of documents were at the trial in the hands of the complaining counsel and were not produced by him when called for, copies of such documents are properly received in evidence.

4. COMMON CARRIER—*when instruction upon obligation of, is improper.* An instruction as follows : " In order to avoid responsibility for injury received by said horses, or any of them, the defendant must prove by a preponderance of the evidence that said horses were injured by their own inherent defect or vice, or by the act of God, or a public enemy," is improper in that it imposes upon the carrier the burden of proving that the injuries were occasioned by the act of God, the public enemy, or because of the inherent vice in the animals themselves; while the true rule is that the *prima facie* case made by plaintiff might have been rebutted by proof that defendant had provided all suitable means of transportation· and had exercised that degree of care which the nature of the property required.

Action on the case for injury to personal property. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS. Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed March 16, 1904. Rehearing denied June 1, 1904.

C. N. TRAVOUS, for appellant; LILLARD & WILLIAMS, of counsel.

WELTY & STERLING, for appellee; W. W. WHITMORE, of counsel.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case. The declaration, which contains one count, charges that appellant, by the negligence of its servants, bruised, lamed, and otherwise injured twenty-one head of horses, delivered to it by appellee for carriage from Jacksonville to Chicago. At the close of the evidence an instruction to find defendant not guilty was presented, but refused. A verdict was returned finding for the plaintiff and assessing his damages at the sum of $400. Judgment was rendered thereon, from which the defendant appeals.

The facts involved in brief, are as follows: Appellee was engaged in the business of buying and shipping horses. On Saturday afternoon, August 30, he loaded twenty-one horses into a car furnished by appellant for that purpose,

at Jacksonville, Illinois, for shipment to Ellsworth & McNair, commission merchants at Chicago. The horses had been purchased by him in the vicinity and were in good condition when they were loaded into the car. Shortly after they were loaded, one end of the car became derailed, in consequence of which the horses were crowded together, and according to appellee's testimony, some eight or ten of them severely injured. They were at once unloaded from the derailed car by appellee's direction, and without further delay put into another car and taken to Chicago, arriving there on Monday morning following. There was no evidence that they sustained further injuries in transit through any fault of appellant.

Appellant introduced in evidence a shipping contract signed by appellee, in which it was expressly agreed in consideration of the rate of freight charged, that no claim for damages which might accrue to appellee should be allowed or paid, or sued for in any court, unless a claim for such damages was made in writing, verified by his affidavit, or that of his agent, and delivered to the general freight agent of appellant at his office in the city of St. Louis, within ten days from the time the stock was removed from the car.

The making of the agreement referred to and its validity were not questioned, but for the purpose of showing a waiver of its requirements, appellee was permitted over appellant's objection, to testify upon that point as follows : that on Monday morning after the arrival of the horses in Chicago, he sent for one Connors, who was the live stock agent of appellant at Chicago, and asked him what was the proper thing to do and what he should do with the horses; that Connors told him to get them in the best possible shape and sell them to the best advantage, and then put in his claim to appellant, when the matter would be investigated and the damages settled; that twelve of the horses were sold on the day they arrived and nine were held until eight days thereafter; that on the day the last of the horses were sold, he told

Connors he had sold them and presented to him, attached together, the following papers, which were admitted in evidence over appellant's objection:

(EXHIBIT 1.)

" ELLSWORTH & McNAIR,

Horses and Mules, Stable No. 6, Union Stock Yards,

CHICAGO, 9–9, 1902.

Sold for account and risk of JOHN JOHNSON.

| No. | Description. | | Price. |
|---|---|---|---|
| 1 | 1 Gr. M. $192.50 | Tramped; total sales 21 horses ............,.. | $2,010.00 |
| 2 | 2 Gr. M. 182.50 | Charged................ | |
| 3 | 3 Ro. H. 112.50 | Lame and bruised; freight including charges on roads and yardage.... | 37.17 |
| 4 | 14 Br. H. 105.00 | Tramp. Sacking tails | 4.35 |
| 5 | 13 Br. H. · 57.50 | Lame. Trimming and braiding.............. | 7.40 |
| 6 | 11 Bl. H. 80.00 | Tramped; shoeing....... | 6.00 |
| 7 | 12 Br. H. 127.50 | Tramped and lame; extra cleaning.............. | 8.00 |
| 8 | 6 Ro. M. 42.50 | Lame; halters .......... | 1.10 |
| 9 | 19 B. M. 90.00 | Hocks bruised; feed bill. | 73.80 |
| 10 | 21 B. M. 72.50 | | |
| | | Commission............ | 63.00 |
| | | | $ 200.82 |
| 11 | 18 Br. H. $ 35.00 | Lame and bruised....... | |
| 12 | 7 Ch. M. 160.00 | | |
| 13 | 4 Gr. H. 92.50 | Tramped............... | |
| 14 | 5 Br. H. 117.50 | E. & O. E. Net proceeds $1,809.18 | |
| 15 | 15 Gr. | | |
| 16 | 16 Gr. M. 200.00 | Remarks. Cost. Dft.........$2,100.00 | |
| 17 | 20 Bl. M. 92.50 | 100.00 | |
| 18 | 9 B. H.⎫ | Cash..........40.00 | |
| | | | $2,240.00 |
| | ⎬ 155.00 | Tramped and bruised. | |
| 19 | 18 B. H.⎭ | Loss....................$ 430.92 | |
| 20 | 8 B. M. 65.00 | | |
| 21 | 17 Br. H. 30.00 | Badly bruised, very lame. | |

$2,010.00 "

(Exhibit 2.)

"Chicago, Sept. 9, '02.

*Wabash Ry. Co.*

In acct. with Ellsworth & McNair,

Strictly Commission Salesmen of All Classes of Horses.

Stable No. 6, Union Stock Yards.

To Loss on Horses, account being damaged—Car dumped off track at Jacksonville, Ill.

Car 4320 transferred            Loss—                    430.82
        to Car 5183—

Car shipped from Jacksonville, Ill., 8–30 to Chicago."

That Connors then replied "That is all right;" that he then asked Connors if there was anything further he wanted him to do, to which Connors replied that that was everything he wanted; that he would present the claim to the company, and that it would be from ten to thirty days before they would hear from it. That several weeks after that he was passing through Chicago and was informed that Connors wished to see him; that he went to Connors' office where Connors told him he had heard from the officials of the company, and exhibited to him a letter which stated that the company had investigated his claim; that they did not deny liability, but that the damages were greater than they could find any record of; that Connors then offered to settle the claim for $30, which offer he refused. Whereupon Connors then gave him the address of one Becker, the general claim agent of appellant at St. Louis, and asked appellee to write to him; that he then wrote to Becker the following letter:

(Exhibit A.)

"Cooksville, Ills., Dec. 23, 1902.

Mr. M. L. Becker:

I had a load of horses thrown from the track at Jacksonville, Ills., last fall. I think in Sept. I had your Agent in Chicago look these horses over and I put in a claim for the damage done them. I was in Chicago a few days ago and spoke to your Agent in regard to the claim & he referred me to you; this claim has run, I think, a sufficient length

of time, and I think your Company has had ample time to look this matter up, and if you have not had this matter looked after I wish you would have it looked up at once and write me in regard to it as it is getting about the first of the year & I want to get this matter straightened up at once."

To which he received the following reply:

(EXHIBIT B.)

"THE WABASH RAILROAD COMPANY.
Freight Claim Department.

ST. LOUIS, Jan. 22, 1903.

MR. JOHN W. JOHNSON, Cooksville, Ills.

DEAR SIR: Returning your letter of Dec. 23rd, which I have been holding trying to get some information regarding the claim in question, but cannot find that any claim in your favor has ever been presented to me. Please explain more fully what the damage consisted of, where the shipment was made from, and name of the agent to whom you presented claim. If you will do this and report to me I will be glad to look into the matter further.

M. L. BECKER,
F. C. A."

Both of which said letters were admitted in evidence over appellant's objection.

McNair, a member of the commission firm to whom the horses were shipped, was also permitted to testify that he called Mr. Connors' attention to the horses on the day they arrived, and was told by him to sell them to the best advantage and to send in the bill, and whatever the damage was he would try to settle it; and that some time after this Connors further told him the company had investigated the matter and was willing to pay $30.

We are of opinion that the foregoing evidence, if competent, established a waiver of the provision of the shipping contract, as to notice.

In Wabash Ry. Co. v. Brown, 152 Ill. 484, the provision of the shipping contract under consideration was substantially the same as that here in question. The facts in that

case as to notice were as follows :   A day or two after the injury, one of the appellees addressed a letter to the claim agent of the company; which was delivered to the station agent of the company to be forwarded, in which letter it was stated the injury had occurred, but damage could not then be determined and further communications would be given.   After the expiration of the five days, appellees again wrote the claim agent, stating the damage.   This letter was answered by the claim agent, stating that the letter had been ‘forwarded to the freight claim agent, who had adjustment of such claims.   Some five days later the freight claim agent wrote appellees saying that his letter had been referred to the legal department for advice as to their liability, and when returned he would communicate further.   Notwithstanding the claim was not verified by affidavit, nor addressed nor delivered to the general freight agent of the company as required by the shipping contract, the court held that the company, having made no objection to the claim upon either of these grounds and treated the claim as pending upon its merits, had waived the requirement providing it should be presented to the general freight agent and that the claim should be verified by affidavits.

It is contended by appellant that the admission of evidence of the foregoing acts and declarations of its live stock agent was error; that the evidence fails to show any authority in Connors, either express or implied, to waive the express terms of the contract.   The witness McNair testified that Connors was live stock agent of appellant at the Union Stock Yards; that at any time there was any damage or anything put in against the railroad, they sent for him to come and look at the stock; that he had charge of the incoming and outgoing live stock on the railroad and that he was the head man.   If it were true, as appellee testified Connors stated to him, that the company had the matter up for adjustment and had authorized Connors to make appellee an offer of $30 in settlement of the claim, such acts on the part of appellant were sufficient to consti-

tute a waiver of the provision of the contract, requiring the claim to be presented to the general freight agent. Wabash Railway Co. v. Brown, *supra*.

Appellant further contends that it was error to permit appellee to testify to the contents of the letter which he testified was shown to him by Connors, to the effect that the company had investigated and did not deny liability, for the reason that no notice was given to produce the letter and that there was no evidence as to who wrote it.

During the direct examination of appellee in rebuttal the following questions were asked and answered, viz: Q. "Did you see Mr. Connors after that?" A. "Yes, sir." Q. "When?" A. "I judge it was four to eight weeks after that; I was passing through Chicago and stopped at Ellsworth & McNair's office and he informed me Connors wanted to see me; I went over to his office and asked him if he had heard anything from my claim; he said he had; I asked him what it was." Objected to. Objection overruled. To which ruling of the court the defendant by counsel then and there excepted. Q. "Proceed." A. "He then said he had heard from the officials of the company; he had a letter and showed me a letter; it stated that the company had investigated and they didn't deny but what they were in fault but the damages was greater than they could find any record of." Objected to. Objection overruled. To which ruling of the court the defendant by counsel then and there excepted. It will be observed that the objections, which we will presume were to the answers quoted, were general only. They should have been specific; the matter of the testimony being competent. Hewett v. Griswold, 46 App. 269; Coffeen Coal & Copper Co. v. Barry, 56 App. 587; C. & A. R. R. Co. v. Winters, 65 App. 435. Grounds of objections to evidence not specifically made in the court below will not be considered in a court of review. M. D. Transportation Co. v. Leysor, 89 Ill. 43; King v. C., D. & V. R. R. Co., 98 Ill. 376.

Appellant insists that the admission in evidence of Exhibits 1 and 2, above set forth, being the bill and statement

handed to Connors by appellant, was error for the follow-
ing reasons: (1) that the same were only copies and no
sufficient notice was given to produce the originals; (2)
that they showed a claim in favor of Ellsworth & McNair
and not in favor of appellee; and (3) that it constituted
the basis upon which appellee. computed his damages and
containing as it did the different items of loss, together
with what purported to be descriptions of injuries to the
horses, could not have done otherwise than materially in-
fluence the jury. It appears from the record that the orig-
inals of the papers were in the hands of appellant's counsel
on the trial and their production was then demanded but
they were not produced. The copies therefore became
competent evidence.

The exhibits which were attached together and so handed
to Connors by appellee, were written on blanks used by
Ellsworth & McNair and while the name of appellee
does not appear on Exhibit 2, Exhibit 1 expressly states
that the claim is on account of John Johnson, the appellee.
It further appears that when the same were handed to
Connors he stated they were everything he needed, and
that he would present the claim to the company; that he
made no objection to their form. The contention that the
items in Exhibit 1 were offered in evidence for the purpose
of showing the amount of damages, is untenable. It
appears from the record that the exhibit was not offered
in evidence during the direct examination of appellee but
that counsel for appellant first referred to it and presented
it to appellee on cross-examination and had it and the
paper attached marked as exhibits. The jury were evi-
dently not misled by the exhibit on the question of the
amount of damages inasmuch as there was sufficient com-
petent evidence adduced to warrant the verdict returned.
Appellee testified, independently of the statement, that the
fair market value of the horses before they were injured
was $2,335 and about $1,900 afterward. McNair testified
that although he never saw them before they were injured
they were worth from $350 to $400 less after they were

injured than before.   It is fair to presume that both appellee and McNair, whose business was the purchase and sale of horses at the Stock Yards in Chicago, were testifying to the market values at that point.   Inasmuch as this evidence stands undisputed by appellant, it was sufficient to warrant the amount of the verdict and judgment.

Appellee's first given instruction told the jury that it was the duty of appellant to carry the horses safely to Chicago and " in order to avoid responsibility for injury received by said horses, or any of them, the defendant must prove by a preponderance of the evidence that said horses were injured by their own inherent defect or vice, or by the act of God, or a public enemy," and if this was not proved, they should find for the plaintiff.   Appellant complains that the instruction requires not only proof that appellant did not injure the horses but a preponderance of the evidence that they were not injured " by their own inherent vice, or by the act of God or a public enemy."   In Burke v. U. S. Express Co., 87 App. 505, we held that " a common carrier is an insurer for safe delivery of live stock, and as such answerable for every loss which cannot be attributed to the act of God, the public enemy, or the nature or proper vices of the animals themselves, and, as in the case of loss by the act of God or public enemy the burden is upon the carrier to show exemption from liability, so also it is in the case of loss or death resulting from the nature or vice of the animal.   In other words, the proof of delivery to the carrier of stock, in live and good condition, and its injury or death while in the custody of the carrier, makes a *prima facie* case against it, which may be rebutted by evidence that it provided all suitable means of transportation, and exercised that degree of care which the nature of the property required."   The instruction is incorrect in that it imposes upon the carrier the burden of proving that the injuries were occasioned by the act of God, the public enemy, or because of the inherent vice in the animals themselves; the true rule being, as we have stated, that the *prima facie* case made by appellee might have been rebutted by

Wabash R. R. Co. v. Johnson.

proof by appellant that it provided all suitable means of transportation, and exercised that degree of care which the nature of the property required. This we believe to be the full extent of the burden cast upon appellant and it was therefore not required to prove either that the injuries were or were not the result of some specific, direct and proximate cause. This inaccuracy in the instruction, however, could have in no way misled the jury or affected the amount of their verdict. We find no evidence in the record to the effect that the injuries were greater when the horses reached Chicago than immediately after they were taken out of the wrecked car, except that they were stiff and jaded and gaunt. No time was taken for a thorough examination of their condition at Jacksonville, and the testimony of appellee as to their injuries at that time was simply what he observed in making the transfer from one car to another. Appellee testified that when he reached Chicago he and McNair examined their condition more carefully, and observed all the injuries which they had sustained, and that the horses were stiff, but there was no claim by him that any injuries had been inflicted after they left Jacksonville. The evidence shows that while at Jacksonville the car in which they were loaded tipped over to one side and stood with one corner of the car three or four feet lower than the other, so that the horses stood on a slanting floor; that about nine or ten of the horses got down in the car, and they probably sustained strains and injuries other than the gashes and cuts, which would necessarily make them stiff and sore by the time they reached their destination. Their condition when they reached Chicago was clearly caused by the derailing of the car at Jacksonville. And again, as we have said, the damages as assessed by the jury were warranted by the evidence.

We find no prejudicial error in the record and the judgment of the Circuit Court is therefore affirmed.

*Affirmed.*