Texas Central Railroad Company v. G. W. Hunter & Company.

Decided June 29, 1907.

1.—Carriers of Live Stock—Inherent Vices—Charge.

Carriers of live stock are not insurers against injuries arising from or attributable to the natural vices, propensities and habits of the animals themselves and which could not be prevented by foresight and care. In a suit for damages to a shipment of cattle, charge considered, and held erroneous.

**2—Same—Unavoidable Damage.**

In the shipment of cattle some damage naturally and unavoidably occurs even when transported by the railroads in the most careful and prudent manner. For such damage the railroads are not liable.

**3.—Inherent Vice—Definition.**

A charge which defines inherent vice as "a fault not possessed by the ordinary of its kind," is too restrictive.

Appeal from the County Court of Hood County. Tried below before Hon. K. H. Faulkner.

*J. A. Kibler,* for appellant.—The issue as to whether or not plaintiff's cattle were injured or damaged from the time they were placed in the pens at Albany until they were delivered by appellant to the Fort Worth & Rio Grande Railway Company, its connecting line at Dublin, by reason of any negligence of appellant, was for the determination of the jury. The court, by the charge complained of, took the issue of negligence from the jury, and thereby made appellant an absolute insurer of the safety of the cattle; whereas, it was only liable for any injury or damage caused by its negligence. Ft. Worth & D. C. Ry. Co. v. James, 87 S. W. Rep., 730; Ft. Worth & R. G. Ry. Co. v. Cage Cattle Co., 95 S. W. Rep., 705; Missouri, K. & T. Ry. Co. v. Kyser & Sutherland, 95 S. W. Rep., 747; San Antonio & A. P. Ry. Co. v. Turner, 94 S. W. Rep., 215; Missouri, K. & T. Ry. Co. v. Garrett, 87 S. W. Rep., 172.

Appellant having pleaded and proven a valid written contract between it and appellee covering the shipment of cattle in question, whereby, in consideration of the reduced rate therein named, appellee released and waived any and all causes of action for damages by reason of any written or verbal contract for the shipment of said cattle prior to the execution thereof, and such written contract being plain and unambiguous on its face, it was the duty of the court to construe the same and charge the jury the effect thereof. Ft. Worth & D. C. Ry. Co. v. Underwood, 87 S. W. Rep., 713; Houston & T. C. Ry. Co. v. Smith, 97 S. W. Rep., 836.

The court erred in the 5th paragraph of his charge to the jury defining the term "inherent vice," wherein such term is defined to mean "a fault not possessed by the ordinary of its kind," and said charge is vague and indefinite, and calculated to and did mislead the jury to the prejudice of this defendant. Century Dictionary & Cyclopedia: "Inherent." Sticking within; strongly lodged or incorporated. Existing as an element, quality or attribute; innately characteristic; intrinsic, as inherent color; inherent beauty of character.

*H. D. Payne,* for appellees.—Where the shipper has done all required of him to prepare the article for shipment and delivered the freight to the company they are insurers against loss, regardless of the question of negligence in a State shipment. Rev. Stat., art. 283 (325), art. 280 (322); Gulf, C. & S. F. Ry. Co. v. Trawick, 80 Texas, 270; Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Texas, 314;

East Line & R. R. Ry. v. Hall, 64 Texas, 620; International & G. N. Ry. v. Dimmit County Pasture Co., 5 Texas Civ. App., 186.

CONNER, CHIEF JUSTICE.—This suit was instituted to recover damages to a shipment of two hundred and ninety-five head of appellees' cattle over the railway of the appellant, the Texas Central Railroad Company, from Albany, Texas, to Dublin, and thence over the Fort Worth & Rio Grande Railway to Granbury and Cresson in Hood County. Appellees alleged, in substance, that they penned their cattle in the cattle pens of appellant at Albany about eleven o'clock on the 18th day of October, 1905; that the pens were wholly insufficient to hold said cattle or the ordinary cattle tendered to it at that place for shipment, and that appellant negligently run a train or engine up near them in an improper and negligent manner and scared and stampeded them and caused them to break the weak and defective stock pen before mentioned, which would not have been the case had said pens been properly constructed and maintained; that all of said cattle in said stampede were bruised, wounded, dehorned, maimed and greatly damaged, after they had been delivered for shipment. Appellees further alleged that the cattle were very roughly handled and bruised and wounded and very greatly delayed on their journey from Albany to Dublin and greatly injured thereby. The trial resulted in a verdict and judgment for appellees in the sum of two hundred and fifty-five dollars as against the appellant, and in favor of the Fort Worth & Rio Grande Railway Company.

Appellant assigns error to the following paragraph of the court's charge: "If you believe from a preponderance of the evidence in this case that plaintiff had ordered cars from the defendant Texas Central Ry. Co. through its agent, for the purpose of shipping cattle from Albany to Granbury and Cresson, Texas, and that on the 18th day of October, 1905, the agent of the defendant Texas Central Ry. Co. told plaintiff to bring his cattle there to Albany for shipment by the noon hour of that day and that plaintiff did take his cattle there and place them in the shipping pens of said defendant and notified said agent of such fact, then I charge you said defendant would be liable to any injury to plaintiff's cattle, if any, while such cattle were in his possession, up to the time it delivered them to its codefendant, save and except such injury, if any, as may have occurred to said cattle, if any, by reason of any inherent vice, if any, in said cattle themselves, and if you so believe you will find for the plaintiff against this defendant.

"If you further believe from a preponderance of the evidence herein that plaintiff's cattle were injured while in the possession of the defendant, The Ft. Worth and Rio Grande Ry. Co., if you find such cattle were injured at all, then your verdict should be against this defendant for whatever injury it inflicted, if any."

We think the assignment must be sustained. It is defended alone upon the ground that after the delivery of appellee's cattle in the pens at Albany, appellant was an absolute insurer against loss or damage, as in cases of inanimate freight. The law, however, has made a distinction in cases of the transportation of live stock. In

a recent work on carriers (Moore on Carriers, page 496, section 1) it is said that: "Carriers of live stock are common carriers subject to all the duties, responsibilities and liabilities, and entitled to all the rights and privileges of a common carrier of merchandise or other inanimate property, save in one important respect. While common carriers are insurers of inanimate property against loss and damage except such as is inevitable or attributable to the act of God, or caused by public enemies, and except that they are not held liable for losses which result from the inherent and intrinsic qualities of the goods carried by them, as carriers of live stock they are not insurers of animals against injuries arising from or attributable to the natural or proper vices, or the inherent natural propensities and habits of the animals themselves, and which could not be prevented by foresight, vigilance and care." See also to the same effect Hutchinson on Carriers, section 221. Appellant by allegation and proof distinctly and forcibly presented the theory that it had exercised foresight, vigilance and care in the construction and maintenance of its pens at Albany and in the operation of the train that is alleged to have frightened appellee's cattle, and also that in the transportation from Albany to Dublin the carriage was made without rough handling or damage and with due care. The charge authorized findings against appellant upon all of these issues irrespective of negligence on appellant's part.

To the extent that recovery for the natural depreciation of the cattle after the transportation began was so authorized the charge was clearly wrong. Some damages naturally arise in shipments of cattle with or without inherent vice, even when transported by railways in the most careful and prudent manner. For such natural injury appellant was in no event liable. Besides, the court's definition of "inherent vice" as used in the charge quoted seems too restrictive. It is as follows: "The term 'inherent vice' as used in this charge means a fault not possessed by the ordinary of its kind." As seen from the authority quoted, the carrier, in the absence of negligence, is not liable for injuries arising from or attributable to the inherent natural propensities and habits of the animals themselves, notwithstanding the fact that the "ordinary of its kind" may have the same inherent natural propensity or habit. Ft. Worth & R. G. Ry. v. Cage Cattle Co., 95 S. W. Rep., 705; Texas & Pac. Ry. v. Slator, 102 S. W. Rep., 156.

We find nothing else in the case requiring special notice. The provision of the contract presented under the eighth and ninth assignments we think has no application in this case.

The objection to the sixth paragraph of the court's charge mentioned in the seventh assignment does not seem to be very important. The charge was that the measure of damages would be "the difference in the value of the cattle, if any, in the condition that they were delivered at Granbury and Cresson, and what they would have been worth had they been properly delivered." It is true, as insisted by appellant, that the true measure would be the difference in the value of the cattle in the condition they were delivered at Granbury and

Cresson, and what they would have been worth had they been transported without negligence. But the jury most probably so understood the charge as given. However, the court on another trial can easily obviate the criticism made.

Special charge number three requested by appellant excludes the issue of the sufficiency of the pens and no error, therefore, is perceived in its rejection.

For the error in the court's charge it is ordered that the judgment be reversed and the cause remanded for a new trial.

*Reversed and remanded.*