BOWIE LUMBER CO., LTD., v. YAZOO & MISS. VALLEY R. R. CO., ET AL.

(January 13, 1930.   Opinion and Decree.)
(March 10, 1930. Rehearing Refused.)
(May 5, 1930.  Writ of Certiorari and Review Refused by Supreme Court.)

Hopkins & Talbot, of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendants, appellees.

HIGGINS, J. The Bowie Lumber Company, Limited, sued the Yazoo & Mississippi Valley Railroad and the Illinois Central Railroad in solido for $374.73, representing the value of fourteen head of cattle, and a refund of freight charges paid to the railroad companies for the handling of these cattle from Centerville, Mississippi, to Bowie, Louisiana, via New Orleans. The petition alleges that on March 30, 1926, plaintiff delivered to the defendants, public carriers, 169 head of cattle in good and sound condition, and that fourteen of the said cattle were killed in transit through the negligence of the defendant in the rough handling and switching of the three cars in which the cattle were loaded, and that the negligence of defendants was a violation of the terms of the contract as shown by the bills of lading.

Defendants admit the shipment and the loss of the fourteen cattle but deny any negligence on their part; that, under the terms of the contract of shipment, defendants were not to be liable except in case of negligence on their part proximately contributing to the damage and that the cattle in question were weak and scrub cattle of little value, and in no condition to be shipped, having been dipped in a strong solution of arsenic, which so weakened them that they were unable to stand the trip; and that the cattle died from inherent vices, for which defendants were not responsible.

There was judgment in favor of defendants dismissing plaintiff's suit, and plaintiff has appealed.

Plaintiff contends, first, that the carrier bears the burden of proving that it was not only free from negligence in causing injury or death to the cattle shipped under the uniform livestock contract, but also that the particular cause of their injury or death was within the specified exceptions of liability stated in the contract; second, that the carrier has not shown itself to be free from negligence with reference to the loss of the fourteen head of cattle in question and the particular cause of their injury and death; and third, that the carrier has failed to establish itself free of any fault or negligence with reference to the injury and death of the two head which died en route from Baton Rouge to New Orleans.

Defendant contends that it bears the burden of proving by a preponderance of the evidence that it was free from fault or negligence in causing the injury and death of the cattle, but contends that the record shows that it has borne this burden successfully.

The two pertinent paragraphs of the uniform livestock contract prescribed by the Interstate Commerce Commission reads as follows:

"Sec. 1. (a) Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the live stock herein described

shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness or natural propensity of the animal, or the act or default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor or threatened violence.

"(b) Unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said live stock occasioned by any of the following causes: Overloading, crowding one upon another, escaping from cars, pens, or vessels, kicking or goring or otherwise injuring themselves or each other, suffocation, fright, or fire caused by the shipper or the shipper's agent, heat or cold, changes in weather or delay caused by stress of weather or damage to or obstruction of track or other causes beyond the carrier's control."

Such limitations of liability or exemptions of liability have been held to be constitutional and valid. Chalona Co. v. American Ry. Express Co., 123 So. 147.

We will first inquire whether the carrier must not only prove itself free from fault in causing the damage, but also prove the particular cause of the damage. The general statement of law on this subject may be found in 10 C. J. 379, paragraph 581:

"Live Stock (a) When Unattended by Shipper—aa. View that Burden Rests on Carrier to Negative Negligence. According to the weight of authority, where it is shown that live stock not accompanied by the shipper was delivered to the carrier in good condition and that it was not delivered, or was received at destination in bad condition, the burden is on the carrier to show that the loss or injury was not the result of its negligence. In some decisions the rule is laid down even more broadly, it being stated that proof that live stock delivered to the carrier was lost or injured while in its possession throws on the carrier the burden of showing that the loss or injury was not due to its neg-

ligence. However, the carrier will be relieved from liability if it can show that it has provided all reasonable means of transportation, and has exercised that degree of care in transporting the property which the nature of the property requires. It need not go further and make a specific explanation as to how the injury occurred."

And it is again clearly stated in Elliott on Railroads, third edition, Vol. 4, at page 832:

"2334 (1548a) Burden of Proof as to Negligence. There is some conflict among the authorities as to the burden of proof in such cases; but the prevailing rule, where the owner or his agent does not go with the stock, is that when the animals are shown to have been delivered to the carrier in good condition, and to have been lost or injured on the way, the burden of proof then rests upon the carrier to show that the loss or injury was not caused by its own negligence. * * *"

In the case of Simms & Sons v. N. O. & N. E. R. Co., 122 La. 268, 47 So. 602, the Supreme Court, in construing a livestock contract and particularly a clause limiting the liability of the carrier except in case of negligence on its part, said:

"As the waiver covers all risks incidental to the transportation of a car load of mules, proof of the non-negligence of the carrier seems to us to be a sufficient defense. Under the waiver, the shipment was at the shipper's risk, barring the negligence of the carrier.

"The precise cause of the injury is immaterial, if it did not result from the negligence of the carrier. Our learned brothers of the Court of Appeal did not consider the legal effect of the contractual waiver, which exempted the carrier from all damages not caused by the negligence of the company. This was error."

The doctrine of the Simms case was re-affirmed in the case of McHenry Horse Exchange v. Illinois Central R. Co., 148 La. 49, 86 So. 649. This was also a case

in which the plaintiff sued for damages for the loss of a mare which died in transit. The court, in disposing of the case, said:

"The contractual limitation entered into between the parties relieved the railroad company from the loss or the death of live stock unless the same was caused by negligence on the part of the railroad company, its agents or employees."

See also Collins v. T. & P. Ry., 11 La. App. 445, 123 So. 504; Glaser v. N. O. T. & M. Ry. Co., 10 La. App. 755, 120 So. 798; C. C. Arts. 2232, 2754.

We are therefore of the opinion that the law places on the carrier the burden of proving by a preponderance of the evidence that it was free from fault or negligence in causing the injury or death of the cattle, but not the precise cause of their injury or death.

We will next consider the question of whether or not the defendant carrier successfully bore the burden of proving by a preponderance of the evidence that the death of the cattle was not due to its fault.

The evidence shows the cattle were loaded in three cars at Centerville, Mississippi, on March 30, 1926. The train left about 8:00 p. m. and arrived at Baton Rouge about 10:00 p. m. the same day. An examination of the cattle at Baton Rouge revealed that nine cattle were dead and three were dying in car I. C. 30352. The cattle in the other two cars were without injury and apparently in good condition. These two cars were immediately sent to New Orleans and arrived on March 31, 1926, where one yearling and a cow were found dead in these two cars respectively. The remaining cattle in car I. C. 30352 were unloaded, fed and watered at Baton Rouge and sent to New Orleans the next day. Upon the arrival of the cattle in New Orleans they were all unloaded, fed and watered and the three cars then shipped from New Orleans to Bowie, Louisiana, and arrived there on April 1, 1926, in good condition. The cattle consisted of cows, calves and yearlings and were unattended either by a representative of the shipper or owner.

The conductor who was in charge of the train between Centerville and Baton Rouge testified that the trip between these two points was without accident, jolts, switching or stops. Neither the conductor in charge of the train from Baton Rouge to New Orleans, nor any members of the train crew, were produced as witnesses for the railroad company, and the movement of the two cars in which two cattle were found dead was unexplained.

The evidence is conflicting as to whether the cattle were in good condition and properly loaded at the time of shipment, but we find that the preponderance of the evidence shows that the cattle were in good condition when shipped and were properly loaded.

The evidence convinces us that the cattle were shipped in cars that were in good order and were handled within a reasonable time, the trip from Centerville, Mississippi, to Baton Rouge, Louisiana, taking about two hours. The conductor in charge of this train testified that the train was operated properly and he is corroborated by the fact that in the other two cars

458

the cattle were uninjured and in good condition on their arrival in Baton Rouge. We are therefore of the opinion that the carrier has proved that it was free from fault insofar as the twelve head of cattle are concerned which were found dead upon their arrival at Baton Rouge.

As to the two cattle which were found dead in New Orleans, the defendant did not offer any evidence to show that the train was properly operated and that the company was free from fault in causing the injury and death of these two animals. Since the company failed to show that it was free from fault in causing injury or death to these two head, it is, therefore, responsible to the plaintiff for the damage resulting from their death.

The evidence shows that these two animals were worth $25 each and that the freight amounted to $1.77 each, making a total of $53.54 for which plaintiff is entitled to judgment.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be and the same is hereby annulled, avoided and reversed, and that there now be judgment in favor of Bowie Lumber Company, Ltd., plaintiff herein, and against the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Railroad Company, in solido, in the sum of $53.54, with legal interest from judicial demand until paid, defendants to pay all costs in both courts.