PANHANDLE & S. F. RY. CO. v. WILSON.

No. 5087.

Court of Civil Appeals of Texas. Amarillo.

Dec. 4, 1939.

Rehearing Denied Jan. 29, 1940.

Adkins, Pipkin, Madden & Keffer, of Amarillo, for plaintiff in error.

Sanders & Scott, Howard F. Saunders, and A. P. Smith, all of Amarillo, for defendant in error.

STOKES, Justice.

This is an action for damages instituted in the county court by defendant in error against plaintiff in error alleged to have resulted to a shipment of forty-nine head of cattle from Bovina, in this state, to Kansas City, Missouri, on April 6, 1937. The allegations and undisputed evidence show that one of the cows died enroute at Emporia, Kansas, and that two were in an injured and crippled condition when they arrived at their destination. No substantial evidence was presented to sustain defendant in error's allegations of loss in quality and weight of the remaining cattle in the shipment, the evidence being confined to the three head mentioned. The trial was before the court without the intervention of a jury and resulted in a judgment in favor of defendant in error for $133.78, which the record shows without dispute was the diminution in value of the two crippled cows and the value of the one that died at Emporia, Kansas. The trial court filed findings of fact and conclusions of law in which he found that the forty-nine head of cattle, when delivered to plaintiff in error at Bovina, were normal, tractable cattle, in good physical condition and had no inherent defects or vices. He further found that the defendant negatived any acts of negligence on its part.

The conclusion of law was to the effect that since there was no inherent vice or weakness in the animals, which were normal and healthy, the plaintiff in error is liable for the actual difference in value of

the shipment caused by the death of the one cow and the injury of the other two.

Plaintiff in error duly excepted to the judgment as entered, gave notice of appeal, and has perfected a writ of error to this court.

The testimony does not disclose the manner in which the two cows received their injuries nor the cause of the death of the one which died at Emporia. Plaintiff in error contends the judgment should be reversed because, first, it overcame any legal presumption that would make it liable as an insurer by exonerating itself in the testimony from negligence of any kind in the manner in which the cattle were handled in transit. Secondly, that the testimony of the witnesses who testified as to the market value of the cattle was based upon hearsay and should have been excluded upon its objection.

Defendant in error proved by his own testimony that the cattle were in good condition when delivered to plaintiff in error at Bovina; that one of them died en route and the other two were in a crippled and damaged condition when the shipment arrived at the Kansas City stockyards. He then introduced a witness by whom he sought to establish the market value of the cattle and the amount of his damages and rested his case, depending upon the rule of law that when a shipment of property is received by a common carrier in good condition and delivered by it at destination in a damaged condition, the carrier is liable for the damage as an insurer of the property.

Plaintiff in error, by depositions of its employees who handled the shipment over the entire route from origin to destination, proved that there was no rough handling of the cattle, no delay in shipment except at Emporia, Kansas, where it was required under the law to unload the cattle for water, feed and rest and, as found by the trial court, exonerated itself completely from any negligence.

Defendant in error contends that the trial court correctly entered judgment in his behalf because he showed that the injuries did not result from inherent vice or weakness of the animals involved in the shipment and that the burden then fell upon plaintiff in error not only to negative the existence of negligence on its part, but to go further and show by affirmative evidence that the injuries to the cattle resulted from one or more of the exceptions established by the law as being those which exempt a common carrier from liability for the injury and damage, viz., (1) the act of God, (2) the act of the public enemy, (3) the act of the public authorities of the state, (4) the act of the shipper, or (5) the inherent vice, propensities or weakness of the animals involved in the shipment.

Since plaintiff in error admits that one cow died in transit and the other two were in a damaged condition upon arrival at destination, as alleged by defendant in error, and defendant in error admits that plaintiff in error has, as found by the court, exonerated itself from negligence, the controlling question presented by the briefs resolves itself into one of whether or not a common carrier, in defending a suit for damages occasioned to a shipment of cattle, where it is shown the animals were delivered to it in good condition and were in a damaged condition upon arrival at their destination, is under the duty to establish the two elements involved in the exceptions laid down by the law as being those which excuse it from liability for the damage. In other words, in this case, did it devolve upon plaintiff in error not only to exonerate itself from negligence in handling the shipment, but also affirmatively to establish the cause or manner in which the cattle were injured and thus bring the cause of their injuries within one of the five exceptions stated by defendant in error?

■ It has been held by the courts of this state, including the Supreme Court, that, generally speaking, a railway company must receive and transport livestock the same as other property and after receiving them for shipment, it becomes an insurer of the safety of the cattle the same as other property and is bound to transport them against loss from any cause except the act of God, the public enemy, the owner, or vice and propensity inherent in the animals. Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Tex. 314, 4 S.W. 567, 2 Am.St.Rep. 494; Fort Worth & D. C. Ry. Co. v. Jordan, Tex.Civ. App., 155 S.W. 676; Chicago, R. I. & G. Ry. Co. v. Scott, Tex.Civ.App., 156 S.W. 294.

■ On account of the nature and disposition of livestock, however, the rule which is strictly enforced as to inanimate freight has been greatly relaxed in its application to the shipment of live animals and it may be said upon good authority that the strict rule in its application to inanimate freight no longer obtains in livestock ship-

ments. Williams & Hawkins v. Gulf & I. Ry. Co., 63 Tex.Civ.App. 543, 135 S.W. 390; Texas Central Ry. Co. v. G. W. Hunter & Co., 47 Tex.Civ.App. 190, 104 S.W. 1075.

Furthermore, it is established law in Texas that the strict rule which makes common carriers liable as insurers of property received by them for transportation is applicable only after they have received them and failed to deliver them at destination or in case of their loss. In cases where shipments have been delayed or damaged in transit but the property is ultimately delivered to the consignee, the carrier is not an insurer of the goods but is bound only by the general rule of liability for a breach of contract, or the public duty which it owes as a common carrier. It is said that the carrier may be excused for delay in receiving the goods or in transporting them after they have been received, whenever the delay is necessarily caused by unforeseen disasters against which human prudence cannot provide, or by accident not caused by the negligence of the carrier, or by thieves, robbers, or other uncontrollable incidents. Gulf, C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S.W. 191, 8 L.R.A. 323, 18 Am.St.Rep. 45.

Whatever may be the present status of the rule of law which makes a common carrier an insurer of goods received by it for transportation, and regardless of what the rule may be with reference to the exceptions in case of shipments of livestock, it is well established law in this state that when the presumption of negligence arises it devolves upon the carrier to show by testimony there was no negligence on its part in connection with the shipment. When the plaintiff establishes the presumption by showing a delivery of the livestock to the carrier; that they were in good condition when delivered, and that they were received at their destination in a damaged condition, the plaintiff has made a prima facie case and shifted to the carrier the burden of exonerating itself from negligence. Texas &. N. O. Ry. Co. v. East, Tex.Civ.App., 57 S.W.2d 175; Leon v. Hines, Tex.Civ.App., 223 S.W. 239.

If the testimony stops there and the carrier adduces no evidence of the manner in which the shipment was handled by it, the plaintiff is entitled to recover. But the rule is equally as well established that, when the case reaches that stage and the burden is thus shifted to the carrier, it adduces legal evidence of the manner in which the shipment was handled and shows by competent evidence that nothing was done or allowed to happen during the time it had possession of the property that could be classed as negligence, it exonerates itself from liability and thus discharges the burden so placed upon it. The prima facie case made by the plaintiff is then destroyed and the duty devolves upon him to proceed further and establish the case made by his pleadings by showing in some manner that the injury and damage resulted from the carrier's negligence.

In this case defendant in error thus made a prima facie case of negligence against plaintiff in error. Plaintiff in error then adduced witnesses who handled the cattle from the time they were received at Bovina until they arrived in the stockyards at Kansas City, Missouri. The chain of this testimony is unbroken. The manner in which the cattle were handled is accounted for by this testimony during every hour of the time and the testimony of these witnesses completely exonerates plaintiff in error from any sort of negligence.

The case of Texas & N. O. Ry. Co. v. East, supra, reveals facts very similar to those revealed by the record in this case. In disposing of that case Chief Justice Fly, speaking for the Court of Civil Appeals of the Fourth District, said [57 S.W.2d 176]: "The judgment in this case must be sustained, if at all, on the presumption of negligence and rough handling on the way to New Orleans. When that presumption arose, then it devolved on the carrier to show by testimony that there was no rough handling, but that the cattle were handled in a careful manner. That is exactly what was done by the carrier, and, in addition, there was affirmative evidence to the effect that the cattle not only did not die from rough handling, but died from the effects of arsenical poison received through dipping at the point of shipment. This latter testimony was clear and to the point, and unassailed and uncontradicted by appellees. It was calmly set aside and ignored by the jury, as was the testimony in regard to the manner in which the cattle were handled by the carrier. To hold that a railroad company cannot destroy a presumption of negligence by affirmative uncontroverted evidence is to hold that, whenever cattle are delivered to a railroad company in good condition at the shipping point, and are delivered in bad condition at the point of

destination, it would amount to a declaration that a railroad company has no defense against the presumption mentioned. That is not the law, however. The evidence as to the handling of the cattle was not the opinion of witnesses, but the positive statement of facts."

While it is true there was some evidence in that case that the cattle were injuriously affected by being subjected to dipping in a solution of arsenical poison, yet the case was disposed of by the court solely upon the principle that the prima facie case made by the plaintiff was destroyed by the testimony of the defendant carrier's witnesses which exonerated the carrier from acts of negligence.

Likewise in the case at bar, there was no conflict in the testimony. It is true that the witnesses who gave this testimony were the employees of the railway company but, as held by the court in the case from which the above quotation is taken, every witness should be judged by his reputation for veracity, his manner of testifying and the reasonableness of his story. The fact that the witnesses were employees of plaintiff in error did not change the rule as to their testimony and neither the court nor a jury has the right arbitrarily to set it aside on that account nor apply to it a different standard from that which is applied to testimony of the ordinary witness. Their testimony was unequivocal and uncontradicted. The prima facie case which defendant in error established was thereby destroyed and the burden of proceeding with the evidence was then shifted back to defendant in error. Gulf, C. & S. F. Ry. Co. v. Downs, Tex.Civ.App., 70 S.W.2d 318; Hudson v. Ernest Allen Motor Co., Tex. Civ.App., 115 S.W.2d 1167.

In the Downs case, supra, the judgment of the lower court was rested exclusively upon the presumptive negligence that had been established by the plaintiff in making out his prima facie case just as the judgment in this case, according to the conclusions of law of the trial court, was poised. In discussing the situation the court held that when the railway company exonerated itself from negligence the burden of proof shifted to the plaintiff and under such circumstances the plaintiff cannot rely for recovery alone on the presumptive rule of negligence.

In view of the holdings of our courts upon the question and the plain principles of justice and right, we cannot accede to the contention of defendant in error. To do so would be, in effect, to hold that the testimony adduced by plaintiff in error, which unquestionably and completely exonerated it from the charge of negligence and which was uncontradicted by any evidence or circumstance in the case, should be set aside and completely ignored. It has never been the law that a common carrier is unable by any sort of testimony to exonerate itself from negligence and responsibility for damage that may arise to a shipment of any kind of property. The courts entertain legitimate defenses of common carriers in such cases the same as they do those of other litigants and unless the law places upon plaintiff in error the duty to go further than it did in exonerating itself here, defendant in error was not entitled to a judgment.

Defendant in error contends further that, admitting plaintiff in error, by the testimony of its witnesses, did exonerate itself from negligence, still, under the law, it was required to go further and affirmatively establish the manner in which the cattle received their injuries. This contention is based upon the expressions found in a number of authorities which hold that, where goods or property is lost, destroyed or damaged by the act of God or the public enemy, etc., in order to relieve itself of liability, the carrier must not only show that the property was destroyed or damaged by the agencies mentioned but it must also establish as a fact that it was not guilty of negligence in connection therewith. In the situations dealt with by the courts in thus expressing themselves it will generally be found that no question was raised as to the manner in which the property was destroyed or damaged. The question being discussed was whether or not, in connection with the force or agency which caused the destruction, loss or damage, the carrier was guilty of negligence. It is well established that even though property in transit is lost or destroyed by the act of God, etc. if the carrier is guilty of negligence in connection with it, the carrier is liable although the principal agency of destruction was one of the exceptions made by the law.

We have been cited to no case wherein the courts of this state have passed upon the identical question with which we are now concerned. It is a matter of common knowledge, however, that live animals when being shipped in railway freight cars, will move about and be thrown against each

other and even tripped and thrown to the floor by the ordinary movements and switching of the cars even though the greatest care is observed on the part of the employees in charge of the train. It is also a matter of common knowledge, of which the courts will take judicial notice, that there is a natural shrinkage in livestock that are subjected to long and distant shipments. They may be injured or even killed by acts which arise out of their own inherent nature as live animals even though not accompanied in any measure by human agency or negligence. It is not unusual that when shipped under the most favorable conditions and attended with the greatest of care on the part of those in charge of the train, livestock often will be received at destination in a condition by no means equal to that which they enjoyed at the point of shipment. The rule under which common carriers may exonerate themselves from the charge of negligence was established, no doubt, in recognition of these facts so that if the carrier establishes the fact that it exercised due care in handling the shipment, the presumption must be that the damage was caused by the nature of the animals themselves or the natural hazards of such a shipment and not by anything that could have been avoided by the carrier. In the case of livestock, which may, and frequently do, suffer injuries that are not attributable to the negligence of the carrier, if the rule under which the carrier is permitted to exonerate itself by showing an absence of negligence on its part were attended by the further requirement that in case of such injury it must also establish the exact cause thereof, the rule which allows it to exonerate itself would become a vain thing.

While this identical question has not been passed upon by our own courts as far as we are able to ascertain, it has been before the courts of other states and generally, if not invariably, decided against the contention of defendant in error. Southern Pacific Co. v. Itule, 51 Ariz. 25, 74 P.2d 38; Bowie Lbr. Co. v. Yazoo & M. V. Ry. Co., 14 La.App. 454, 131 So. 689; Western Ry. Co. v. Harwell, 91 Ala. 340, 8 So. 649; Central of Georgia Ry. Co. v. Patterson, 17 Ala.App. 305, 84 So. 471.

In cases such as this, where the carrier by competent and uncontradicted evidence, completely exonerates itself from an implication of negligence, the burden of proceeding with the evidence and establishing his case then falls to the plaintiff. In such case it is not the duty of the carrier to establish the exact cause of the injury. Indeed, the cause or manner in which it happened, in the absence of negligence, becomes immaterial unless the plaintiff can rebut the testimony by which the carrier exonerates itself from the implication or charge of negligence.

After establishing the fact that the cattle were promptly transported from the point of shipment to their destination without negligence on its part by plaintiff in error, the defendant in error failed to adduce any further testimony or in any manner rebut the evidence presented by plaintiff in error but stood upon the proposition that plaintiff in error was, under the law, an insurer of the cattle and could not relieve itself by showing that the shipment was made without negligence on its part. The law does not support the defendant in error in this contention and he was, therefore, not entitled to a judgment.

We have carefully considered all of the contentions made by the parties and, in our opinion, the action of the court in rendering judgment in favor of defendant in error was contrary to the evidence and the law applicable to the case. The case seems to have been fully developed and we conceive no benefit that would result to any of the parties by another trial. The judgment of the trial court is, therefore, reversed and judgment will be here rendered that defendant in error take nothing by his suit and that he pay the costs of the trial court and of this court.

### On Motion for Rehearing.

In deference to the earnest and able argument presented by defendant in error in his motion for a rehearing, we deem it appropriate to say that our holding in the original opinion does not have the effect of changing, nor does it in any manner conflict with the doctrine so often expressed by the courts of this and many other jurisdictions to the effect that, under the common law, which by statute is the rule of decision in this state, a common carrier must rebut the implication of negligence created by proof of delivery to it of livestock in good condition and redelivery at the point of destination in damaged condition. Nor do we question the rule that the carrier may exonerate himself only by showing that the damage occurred through

one of the excepted causes and that the carrier was not guilty of negligence in connection therewith.

■ Defendant in error calls our attention to the holding of this court in Panhandle & S. F. Ry. Co. v. Andrews, 278 S. W. 478, 482, wherein, speaking through Chief Justice Hall, we said: "Where the loss is not due to the excepted causes, proof of negligence is immaterial, and the carrier cannot escape liability by proving reasonable care and diligence." He suggests that our holding in the instant case is in conflict with our holding in that case. In the Andrews case, a different question was being discussed, viz., an injury to the property that was inflicted by an agency outside of, and not included in, the excepted causes. The facts in this case remove it from the rule there being discussed because they show that, when the cattle were delivered to plaintiff in error, they were in good condition and that, when they were delivered at the point of destination, one of them was dead and two others were crippled. The exact nature of the injuries to the crippled cattle was not shown nor was the exact cause of death to the other one explained. The death and injuries were not shown to have resulted from causes other than those which may have been received in an ordinary shipment without negligence on the part of the carrier. They were such as could have occurred by reason of the nature of the animals which were being transported under the conditions which accompany all shipments of such livestock. In such case the law is well settled that, where the exact cause of the injuries is not known, it will be presumed the injuries occurred through the nature, propensities, weakness or inherent vice of the animals involved in the shipment, where the carrier exonerates itself of any negligence that could have caused the injuries.

In the case of Davis, Director General, v. Sullivan & Opry, Tex.Com.App., 258 S.W. 157, 161, it is said:

"If the carrier has exercised that degree of diligence and foresight in the transportation of live animals as under the particular circumstances of the shipment constitutes ordinary care, and still they are delivered in a damaged condition, the damage sustained would be attributed alone to the inherent vices of the animals, where that is the issue. Or, in other words, the exclusion from the carrier's liability of such loss and injury as does not arise from, or is not contributed to by, its negligence, merely leaves the shipper without compensation for the loss and damage which, theoretically at least, his cattle would anyhow have sustained on account of their inherent nature, and for which the carrier is not liable in any event. * * *

"When the shippers proved delivery to, and acceptance by, the originating carrier of the cattle, and losses and injuries at destination, a prima facie case was made out such that to relieve themselves of liability the affirmative was on the carriers to show such losses and injuries to have occurred from some of the excepted causes. They could have met or rebutted the prima facie case so made out by showing that they exercised such diligence and foresight in the handling of the cattle as amounted to ordinary care, or that the injuries arose from the negligence of the shippers in overcrowding their cattle in the car."

To the same general effect are the holdings in the cases of St. Louis, B. & M. Ry. Co. v. Murray, Tex.Civ.App., 40 S.W.2d 949, and Kansas City, M. & O. Ry. Co. v. Cauble, Tex.Civ.App., 286 S.W. 478.

In the early case of Ryan & Co. v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am.Rep. 589, in discussing this question, our Supreme Court, speaking of the carrier, said: "He may rebut it (the prima facie case) only in one way, and that is by showing that the goods were lost by one of the exceptions known to the common law, or one of the special exceptions reserved in his contract with the shipper. If, by neither a common law exception, or one specially reserved, he is exonerated, he must show that the loss happened without negligence on his part."

Defendant in error again insists that before it could be exonerated from negligence, plaintiff in error must not only show that it was not guilty of negligence, but must go further and show the specific cause of the injuries to the cattle. As we have stated, the exact manner in which the cattle were injured is not shown by the record but, inasmuch as they undoubtedly could have been injured as they were by the natural disposition of the cattle themselves and the consequences of transporting them and that plaintiff in error proved by uncontradicted testimony that it was not guilty of any negligence in connection with the shipment, following the cases above cited, it will be presumed that the injuries occurred as a natural and ordinary consequence of rail-

way transportation of live animals and their nature, disposition and propensities. It will be seen, therefore, that the common law rule contended for by defendant in error is upheld rather than ignored by our holding on this question. In other words, the effect of our holding is that negligence being eliminated, as it was by the proof in this case, the presumption is that the injuries occurred, as they could have occurred, through one of the excepted causes, viz., the inherent vice, the nature or the propensities of the animals involved in the shipment. Gulf, C. & S. F. Ry. Co. v. Downs, Tex.Civ.App., 70 S.W.2d 318; Leon v. Hines, Tex.Civ.App., 223 S.W. 239; Gulf, C. & S. F. Ry. Co. v. Helms Bros., Tex.Civ. App., 210 S.W. 853; Fort Worth & D. Ry. Co. v. Berry, Tex.Civ.App., 170 S.W. 125; Wabash R. R. Co. v. Johnson, 114 Ill.App. 545; Illinois Central Ry. Co. v. Teams, 75 Miss. 147, 21 So. 706; Talbott v. Payne, Director General, 90 W.Va. 280, 111 S.E. 328.

The motion for rehearing will be overruled.